[No. G034912. Fourth Dist., Div. Three. Dec. 19, 2005.]

CHRISTOPHER P. RUIZ et al., Plaintiffs and Respondents, v.
HARBOR VIEW COMMUNITY ASSOCIATION, Defendant and Appellant.

**1460**

## Counsel

Lewis Brisbois Bisgaard & Smith and Gary M. Lape for Defendant and Appellant.

Tharpe & Howell and Paul W. Burke for Plaintiffs and Respondents.

## Opinion

**FYBEL, J.—**

### Introduction

Defendant Harbor View Community Association (HVCA) appeals from the trial court's denial of HVCA's special motion to strike the libel cause of action pursuant to Code of Civil Procedure section 425.16 (all further code references are to the Code of Civil Procedure unless otherwise indicated). Section 425.16, commonly referred to as the anti-SLAPP statute,[1] provides for a special motion to strike "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or

---

[1] SLAPP is an acronym for strategic lawsuit against public participation. (*Briggs v. Eden Council for Hope & Opportunity* (1999) 19 Cal.4th 1106, 1109, fn. 1 [81 Cal.Rptr.2d 471, 969 P.2d 564].) An order granting or denying a special motion to strike is appealable pursuant to section 425.16, subdivision (j).

free speech under the United States or California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).)

The complaint, filed by Christopher P. Ruiz (Ruiz) and Theresa Keane-Ruiz (collectively Plaintiffs), alleges nine causes of action stemming from the denial by HVCA's architectural committee of Plaintiffs' conceptual plans to rebuild their house, which lies within the development subject to the HVCA. In the libel cause of action, Ruiz alone alleges two letters written by HVCA's attorney defamed him. The trial court denied HVCA's anti-SLAPP motion to strike the libel cause of action on the ground the letters did not come within the definition of an "act in furtherance of a person's right of petition or free speech under the United States or California Constitution in connection with a public issue" under section 425.16, subdivision (e).

We hold the two letters were protected speech under subdivision (e)(4) of section 425.16. Ruiz failed to meet his burden of proving the second letter was defamatory and either letter had been published. Ruiz requested relief from the stay imposed by section 425.16, subdivision (g) to conduct discovery on the issue of publication, but the trial court's ruling on the anti-SLAPP motion made such discovery unnecessary. In light of our conclusions that both letters were protected under the anti-SLAPP statute and the second letter was not defamatory, we reverse and remand with directions for the trial court to reconsider Ruiz's request for discovery on the issue only of publication of the first letter.

FACTS

In August 2001, Plaintiffs purchased a house on Port Margate Street in Newport Beach. They intended to raze the existing house on the site and to construct a new house.

Plaintiffs' house was on one of over 523 lots in a development governed by HVCA, a nonprofit mutual benefit corporation. HVCA was formed in 1968, to provide "community services and recreational facilities for the general use, benefit and welfare of the owners . . . of residential lots situated within" that development. Among its purposes was "[t]o examine and approve plans and specifications for dwelling houses and other structures and improvements to be erected within . . . [the development] or the modification, and/or alteration thereon and/or additions thereto." HVCA's board of directors (the Board) is vested with the exercise of its corporate powers and with control over HVCA's business and affairs.

Plaintiffs' house was, as were the others in the Harbor View development, subject to a declaration of covenants, conditions and restrictions (CC&R's) recorded on September 30, 1968, and thereafter amended several times. The CC&R's established architectural controls over the development enforced by an architectural committee appointed by the Board. Under the CC&R's, "[n]o building, fence, wall or other structure shall be commenced, erected or maintained . . . , nor shall any exterior addition to or change or alteration therein, including exterior colors, trim, windows, roofing, patio covers and antennas, be made until the plans and specifications showing the nature, kind, shape, height, materials and location of the same shall have been submitted to and approved in writing as to harmony of external design and location in relation to surrounding structures and topography by the Architectural Committee."

HVCA promulgated architectural committee guidelines "to provide a procedural and substantive basis for homeowner applicants to construct improvements within the community in a manner which is compatible and in harmony with the existing external design of homes in the community." The guidelines' purposes are "to maintain the existing architectural character of this community" and "to attain a continuity of design, which will help maintain appearance and enhance the overall value of all properties." The guidelines require, among other things, the total square footage of all structures on a lot to not exceed 67 percent of the proposed flat pad area of the lot.

In February 2003, Plaintiffs submitted to the architectural committee conceptual plans to erect a new house on their lot. The committee reviewed the plans on March 19 and recommended denying them. Plaintiffs learned of the denial in a March 25, 2003 letter from Jill Schwalbe of Villageway Management, Inc. (Villageway), the property manager for HVCA. By means of the letter, the architectural committee requested that Plaintiffs submit revised plans and identified 13 recommended modifications, including reduction of house size. The house Plaintiffs had designed for the lot exceeded the maximum square footage permitted by the architectural guidelines by at least 900 square feet.

The March 25 letter requested Plaintiffs to provide information to Villageway and directed them to contact Villageway with any questions or concerns. In response, Ruiz had several telephone conversations with Schwalbe. Ruiz did not believe Schwalbe provided a meaningful explanation for the committee's denial of Plaintiffs' plans. According to the complaint, Schwalbe told Ruiz the architectural committee would approve Plaintiffs' plans if Plaintiffs could establish that other houses in the development had similar designs, features, or materials, but the committee "would not compromise regarding any issue relating to the square footage limitation or the manner of its computation."

Ruiz attended the next architectural committee meeting to "gain insight into the Committee's reasons for denying my architectural plans." He asked the committee why it rejected his plans and asked how he could bring the plans within the committee's standards. One committee member asked Ruiz if he was an attorney. Ruiz responded by asking whether being an attorney would be held against him. No one responded. According to Ruiz, the same committee member said if Ruiz did not agree with the committee's decision, he could sell his house or sue his architect. Ruiz was asked to put all of his questions to the committee in writing. Ruiz contends he tried to attend subsequent architectural committee meetings, but was told the meetings were open only to those with business before the committee because "homeowners . . . prefer the privacy of these closed meetings."

Ruiz attended the Board's meeting on June 11, 2003, to discuss the rejection of his architectural plans. The Board also told Ruiz to put any questions in writing and advised him the Board intended to enforce the architectural standards as written in the guidelines.

Ruiz prepared a 12-page letter to the architectural committee and the Board dated July 2, 2003, regarding the denial of the plans and expressing "the hope that an understanding and an agreement can be reached." The letter asserted the architectural committee's decisions "were largely arbitrary and capricious, based not upon an objective set of established criteria but upon subjective sensibilities of the committee members" and the committee "applied the same subjective preferences as a basis for rejecting many of the items contained in our application." The letter claimed the architectural committee had engaged in activity which was "inequitable, unreasonable and improper" by failing to consistently apply the 67 percent restriction of the guidelines; asserted the Board had changed the architectural guidelines without notice to the homeowners; and expressed "grave concerns that these actions taken by the architectural committee and board of directors may expose the association to serious liability and potential damages."

The July 2 letter requested, "[i]n a good faith effort to establish a dialogue," that the architectural committee respond to 12 requests for information, including production of the homeowner membership log. Plaintiffs made additional requests for information from the Board in a letter dated July 7, 2003.

HVCA's attorney, Martin Lee, responded to Ruiz in a letter dated July 11, 2003 (the July 11 letter). The second paragraph of the July 11 letter, which Ruiz claims was libelous, stated in full: "Initially, let me tell you how reprehensible I find it that you, as an attorney and a member of the State Bar of California, while attempting to conceal your superior legal knowledge and

education as an attorney, undertook to negotiate, monitor, observe, harangue, cajole and intimidate laypersons (the directorship and Architectural Committee of the Harbor View Community Association) who you knew had no knowledge of your superior skill and knowledge as an attorney and member of the State Bar. Your only apparent defense to this reprehensible conduct is recited by you in your letter of July 2, 2003 to the effect that, when asked by the laypersons involved if you were an attorney, you refused to directly answer the query and asked 'if being a lawyer would be held against' you. Such conduct by a member of the Bar is simply unconscionable. State law requires an attorney to be truthful—and this is especially the case when he or she is dealing with laypersons (cf. *Business and Professions Code* § 6068). As officers of the Court, attorneys have a duty to deal honestly and fairly with others (*Gionis v. Superior Court* [1988] 202 [Cal.App.]3d 786 [248 Cal.Rptr. 741]). You have egregiously violated these duties." The July 11 letter then responded to various assertions Ruiz made in the July 2 letter.

Ruiz responded to the July 11 letter in a letter dated July 30, 2003. The July 30 letter denied the accusation that Ruiz had breached his ethical duties, accused the Board of "embark[ing] upon a course of action which only seems to make litigation inevitable," requested the Board to provide copies of various documents and records, and asked the Board to review the architectural committee's decision regarding Plaintiffs' plans. Lee and Ruiz continued to trade sharply worded correspondence for the next several months, culminating in an October 15, 2003 letter (the October 15 letter) from Lee.

Ruiz claims the following portions of the October 15 letter were libelous: "I have been advised that you attend every single meeting of the Board of Directors and sit there taking what appear to be copious notes of ostensibly everything being said by everyone. While you have a right under *Civil Code* § 1363.05 to attend directors' meetings, you seem to be the *only* member of the Harbor View Community Association who has ever so fully availed himself of this 'right[.'] [¶] Contrary to what you further say in your letter, the Board of Directors has spent the better part of the past six months answering your questions (most of which are set forth in extremely verbose written correspondence). The directors of the Harbor View Community Association are all unpaid volunteer homeowners. You are *not* the only member of the Harbor View Community Association and your endless queries (most of which appear completely frivolous) are becoming more and more like the Shakespearian 'pound of flesh' that you feel you are entitled to as revenge for the ostensible temerity of the association's Architectural Committee in not approving your architectural plans. [¶] When your architectural application was rejected, the Architectural Committee informed you

*specifically* and in *writing* why it was being denied (principally because the proposed home exceeded the maximum square footage allowed). Since that time, you have made absolutely no attempt to resubmit modified plans that make the proposed home compliant with the existing architectural guidelines. Instead, you have devoted an inordinate amount of time harassing the Harbor View Community Association directorship with cockamamy [*sic*] document inspection requests and virtually stalking and staring down the directors at their regularly scheduled meetings. For you to infer that somehow the Harbor View Community Association has been unfair to you is like the tea kettle calling the coffee pot black." (Fn. omitted.)

## PROCEEDINGS IN THE TRIAL COURT

Plaintiffs filed this lawsuit in July 2004. Their complaint alleges nine causes of action against HVCA and seeks, among other things, a declaration that the denial of their conceptual plans was "improper, unequitable [*sic*], unreasonable, arbitrary and in bad faith" and that HVCA is barred or estopped from enforcing the architectural guidelines. The sixth cause of action, brought only by Ruiz, seeks damages for libel and alleges the July 11 letter and the October 15 letter are libelous on their face.

On September 2, 2004, HVCA filed its anti-SLAPP motion.[2] Although directed particularly to the sixth cause of action, the motion moved to strike all "such causes of action pleaded against defendant arising out of acts by defendant in furtherance of its right of petition or free speech . . . in connection with a public issue." After filing opposition, Ruiz applied ex parte for relief from the discovery stay imposed by section 425.16, subdivision (g) to conduct discovery related to his libel cause of action. The record does not include a ruling on the application.

On December 10, 2004, the trial court denied the anti-SLAPP motion on the ground HVCA "failed to meet its burden of making a prima facie showing that the two letters which form the basis for plaintiffs' [*sic*] libel claim are covered by CCP [section] 425.16." HVCA timely appealed.

---

[2] The motion initially was set to be heard on October 29, 2004, as that was the earliest date provided by the court clerk. On September 7, the trial court (Judge Monroe) granted HVCA's ex parte application to advance the hearing date to October 1. But on October 1, the trial court (Judge Banks) determined its calendar was too congested to hear the motion and ordered the matter continued to December 10, 2004, the court's next available hearing date. The motion therefore was timely heard. (Code Civ. Proc., § 425.16, subd. (f).)

ANALYSIS

### I. *Statutory Framework*

■ Section 425.16 provides for a special motion to strike "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) "The Legislature enacted the anti-SLAPP statute to protect defendants, including corporate defendants, from interference with the valid exercise of their constitutional rights, particularly the right of freedom of speech and the right to petition the government for the redress of grievances." (*Schoendorf v. U.D. Registry, Inc.* (2002) 97 Cal.App.4th 227, 235 [118 Cal.Rptr.2d 313].)

■ In analyzing a section 425.16 motion, the court engages in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 67 [124 Cal.Rptr.2d 507, 52 P.3d 685].) The moving defendant meets this burden by showing the act underlying the plaintiff's cause of action comes within section 425.16, subdivision (b)(1). (*Equilon Enterprises v. Consumer Cause, Inc., supra,* at p. 67.) If the defendant meets this initial burden, the burden then shifts and the plaintiff must show a probability of prevailing on the claim. (*Ibid.*) The plaintiff must demonstrate the complaint is both legally sufficient and is supported by a prima facie showing of facts sufficient to sustain a favorable judgment if the evidence submitted by the plaintiff is given credit. (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 88–89 [124 Cal.Rptr.2d 530, 52 P.3d 703].)

We review de novo whether section 425.16 protects the subject speech and whether Ruiz demonstrated a probability he would prevail on his libel cause of action. (*Nagel v. Twin Laboratories, Inc.* (2003) 109 Cal.App.4th 39, 44 [134 Cal.Rptr.2d 420].)

### II. *Did the July 11 Letter and the October 15 Letter Constitute Acts in Furtherance of HVCA's Right of Petition or Free Speech in Connection with a Public Issue?*

A defendant can meet his or her burden by demonstrating the acts underlying the plaintiff's cause of action fit within one of the categories of section 425.16, subdivision (e). (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 78 [124 Cal.Rptr.2d 519, 52 P.3d 695].) Section 425.16, subdivision (e)

defines an act in furtherance of the defendant's right of petition or free speech in connection with a public issue to include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest."

■ The July 11 letter and the October 15 letter, we conclude, fall within section 425.16, subdivision (e)(4),[3] which encompasses conduct in furtherance of the exercise of the constitutional right of petition or free speech in connection with an issue of public interest.[4] In *Averill v. Superior Court* (1996) 42 Cal.App.4th 1170, 1175 [50 Cal.Rptr.2d 62], a panel of this court concluded the anti-SLAPP statute protects private conversations regarding a public issue. *Averill* was decided before the Legislature added subdivision (e)(4) to section 425.16, but "lends support to the supposition that subdivision (e)(4) is intended to cover private communications on public issues." (*Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 897, fn. 4 [17 Cal.Rptr.3d 497].) "Section 425.16, therefore, governs even private communications, so long as they concern a public issue." (*Id.* at p. 897; see also *Terry v. Davis Community Church* (2005) 131 Cal.App.4th 1534, 1546 [33 Cal.Rptr.3d 145] ["subdivision (e)(4) applies to private communications concerning issues of public interest"].)

Private letters, such as the July 11 letter and the October 15 letter, are similar to private conversations and should be afforded the same protection. Do the July 11 letter and the October 15 letter concern a public issue or an issue of public interest?

---

[3] Clauses (1) and (2) of section 425.16, subdivision (e), but not clauses (3) and (4), are coextensive with the litigation privilege of Civil Code section 47, subdivision (b). (See *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 650 [49 Cal.Rptr.2d 620].) As explained *post*, the July 11 letter is not protected by the litigation privilege of Civil Code section 47, subdivision (b), and therefore does not fall within section 425.16, subdivision (e)(1) or (2).

[4] A defendant moving to strike a cause of action under section 425.16, subdivision (e)(1) or (2) need not separately demonstrate the statement concerned an issue of public significance because those clauses protect any written or oral statement made in the applicable setting. (*Briggs v. Eden Council for Hope & Opportunity, supra,* 19 Cal.4th 1106, 1123.) In contrast, subdivision (e)(4) of section 425.16 protects only conduct undertaken "in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4); see *Briggs v. Eden Council for Hope & Opportunity, supra,* at p. 1117.)

"Public interest" within the meaning of the anti-SLAPP statute has been broadly defined to include, in addition to government matters, " 'private conduct that impacts a broad segment of society and/or that affects a community in a manner similar to that of a governmental entity.' " (*Du Charme v. International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 115 [1 Cal.Rptr.3d 501] (*Du Charme*).) In that case, the court held a statement posted on a labor union's local Web site stating the local's business manager had been removed for financial mismanagement did not come within section 425.16, subdivision (e)(2) because the statement was not made in connection with an issue under consideration, the business manager having already been removed. (*Du Charme, supra,* 110 Cal.App.4th at pp. 118–119.) The Web site statement did not come within section 425.16, subdivision (e)(3) or (4), the court held, because the statement was not made in connection with a public issue or an issue of public interest. (*Du Charme, supra,* at p. 119.)

In concluding the Web site statement did not fall within section 425.16, subdivision (e)(3) or (4), the court in *Du Charme* held "that in order to satisfy the public issue/issue of public interest requirement of section 425.16, subdivision (e)(3) and (4) of the anti-SLAPP statute, in cases where the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance." (*Du Charme, supra,* 110 Cal.App.4th at p. 119.) The *Du Charme* court did not determine "what limitations there might be on the size and/or nature of a particular group, organization, or community, in order for it to come within the rule we enunciate today." (*Ibid.*)

█ We agree with the analysis of *Du Charme* and find it applicable here. When the July 11 letter and the October 15 letter were written, Plaintiffs and HVCA were involved in ongoing disputes over approval of Plaintiffs' conceptual plans, the application of HVCA's architectural guidelines, and Plaintiffs' demands for information and documents. Those disputes were of interest to a definable portion of the public, namely, the members of HVCA, because they would be affected by the outcome of those disputes and would have a stake in HVCA governance. Ruiz's conduct at HVCA board meetings and interaction with board members affected HVCA governance and therefore would also be of interest to community members. The residents of over 523 lots were part of HVCA, a large enough group to come within the requirements of *Du*

*Charme.* The July 11 letter and the October 15 letter were written in the context of the disputes between Plaintiffs and HVCA, were part of the ongoing discussion over those disputes, and "contribute[d] to the public debate" on the issues presented by those disputes. (*Wilbanks v. Wolk, supra,* 121 Cal.App.4th at p. 898.)

Ruiz argues there was no issue under consideration by the Board when the July 11 letter and the October 15 letter were written because Plaintiffs' conceptual plans were denied in March 2003. In denying the plans, the architectural committee asked Plaintiffs to submit new plans addressing the committee's concerns. The controversy over the plans continued for months, and evolved into a controversy over HVCA governance, as Ruiz challenged the architectural committee's decisions, accused the committee of arbitrarily enforcing the architectural guidelines, asked HVCA to address various issues, and requested information and documents from the Board. Ruiz's July 2, 2003 letter expressed a desire to "commence a dialogue" with the Board; the July 11 letter and the October 15 letter were written by HVCA's attorney acting on behalf of HVCA and/or the Board and were part of the requested dialogue.

*Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468 [102 Cal.Rptr.2d 205] (*Damon*) supports our conclusion the July 11 letter and the October 15 letter concerned matters of public interest. In *Damon,* several members of a homeowners association wrote letters published in the association newsletter and made statements at association board meetings criticizing the association's manager. (*Id.* at pp. 471–472.) The Court of Appeal held the statements fell within section 425.16, subdivision (e)(3) because they were made in public forums (the newsletter and the board meetings) and in connection with an issue of public interest.[5] (*Damon, supra,* 85 Cal.App.4th at pp. 474–475.) The statements concerned the issues whether the association should switch to a professional management company and the manager's competence to manage the association. (*Id.* at p. 479.) Those issues were of public interest to association members because they concerned "the very manner in which this group of more than 3,000 individuals would be

---

[5] In *Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1131, footnote 4 [2 Cal.Rptr.3d 385], the court criticized *Damon*'s holding the association newsletter was a public forum within the meaning of subdivision (e)(3) of section 425.16. We cite *Damon* as support only for our conclusion the July 11 letter and the October 15 letter concerned matters of public interest within the meaning of subdivision (e)(4) of section 425.16, which does not require the statements be made in a public forum. *Weinberg v. Feisel* concluded private communications about private matters do enjoy anti-SLAPP protection and did not address whether private communications about public matters fall within subdivision (e)(4) of section 425.16. (*Weinberg v. Feisel, supra,* 110 Cal.App.4th at p. 1132.) The court that decided *Weinberg v. Feisel* held in *Terry v. Davis Community Church, supra,* 131 Cal.App.4th at page 1546, that subdivision (e)(4) applies to private communications concerning public issues.

governed—an inherently political question of vital importance to each individual and to the community as a whole." (*Ibid.*)

Granted, the connection between the statements and the public interest in this case is more attenuated than in *Damon*. Here, Plaintiffs' requests for information and documents, and Ruiz's conduct at board meetings, could be seen as private disputes between Plaintiffs and the Board, or as an effort " 'to gather ammunition for another round of [private] controversy' " (*Weinberg v. Feisel, supra,* 110 Cal.App.4th at pp. 1132–1133). But those activities are related to and arise out of the architectural committee's denial of Plaintiffs' conceptual plans, and concern the issue whether the architectural guidelines had been evenhandedly enforced, a matter of concern to HVCA members. The focus and primary purpose of the letters concerned HVCA governance and enforcement of its architectural guidelines, issues of concern to the many HVCA members.

The July 11 letter and the October 15 letter are neither tactful nor productive. The writer would have been wise to heed Anthony Trollope's advice "that no angry letter be posted till four-and-twenty hours will have elapsed since it was written." (Trollope, The Bertrams (1859) vol. 3, ch. 18.) But affording the July 11 letter and the October 15 letter anti-SLAPP protection furthers the statute's policy of encouraging public participation in matters of public interest. Accordingly, the trial court erred in concluding HVCA failed to meet its burden of establishing the allegedly defamatory letters came within section 425.16, subdivision (e). We turn then to the issue whether Ruiz met his burden of establishing a probability of prevailing on the libel cause of action.

### III. Did Ruiz Show a Probability of Prevailing on the Libel Cause of Action?

Ruiz, to meet his burden of showing a probability of prevailing on the libel cause of action, had to "make a prima facie showing of facts that would, if proven, support a judgment in [his] favor." (*Nagel v. Twin Laboratories, Inc., supra,* 109 Cal.App.4th 39, 45.)

#### A. Ruiz Met His Burden of Making a Prima Facie Showing the July 11 Letter Was Libelous, but the October 15 Letter Was Nonactionable Hyperbole, Epithet, and Metaphor.

Libel is a "false and unprivileged publication by writing, printing, . . . or other fixed representation to the eye, which exposes any person to hatred, contempt, ridicule, or obloquy, or which causes him to be shunned or

avoided, or which has a tendency to injure him in his occupation." (Civ. Code, § 45.) "The *sine qua non* of recovery for defamation . . . is the existence of falsehood." (*Letter Carriers v. Austin* (1974) 418 U.S. 264, 283 [41 L.Ed.2d 745, 94 S.Ct. 2770].) A statement is libel on its face if it "is defamatory of the plaintiff without the necessity of explanatory matter, such as an inducement, innuendo or other extrinsic fact." (Civ. Code, § 45a.)

Ruiz alleged the July 11 letter and the October 15 letter are libelous on their face. He argues: (1) the July 11 letter falsely accused him of behaving unconscionably, violating his ethical obligations as an attorney, and bullying and deceiving the board members; and (2) the October 15 letter falsely accused him of committing the crime of stalking. HVCA counters that the letters express nonactionable opinions, hyperbole, and metaphor.

*Franklin v. Dynamic Details, Inc.* (2004) 116 Cal.App.4th 375 [10 Cal.Rptr.3d 429] (*Franklin*) lays out the analysis for determining whether the July 11 letter and the October 15 letter are libelous on their face. In resolving that issue, "the question is not strictly whether the published statement is fact or opinion . . . [r]ather, the dispositive question is whether a reasonable fact finder could conclude the published statement declares or implies a provably false assertion of fact." (*Id.* at p. 385.) "[S]atirical, hyperbolic, imaginative, or figurative statements are protected because 'the context and tenor of the statements negate the impression that the author seriously is maintaining an assertion of actual fact.' " (*Ibid.*) "Whether a statement declares or implies a provably false assertion of fact is a question of law for the court to decide [citations], unless the statement is susceptible of both an innocent and a libelous meaning, in which case the jury must decide how the statement was understood." (*Ibid.*)

■ An opinion or legal conclusion is actionable only " 'if it could reasonably be understood as declaring or implying actual facts capable of being proved true or false.' " (*Franklin, supra,* 116 Cal.App.4th at p. 386.) Thus, an opinion based on implied, undisclosed facts is actionable if the speaker has no factual basis for the opinion. (*Id.* at pp. 386–387.) An opinion is not actionable if it discloses all the statements of fact on which the opinion is based and those statements are true. (*Id.* at p. 387.) An opinion is actionable if it discloses all the statements of fact on which the opinion is based and those statements are false. (*Ibid.*) In determining whether a statement is actionable opinion, we examine the totality of the circumstances, starting with the language of the allegedly defamatory statement itself. (*Id.* at p. 385.)

The July 11 letter expressed the opinions that Ruiz was "reprehensible," engaged in "unconscionable" conduct, bullied laypersons, and "egregiously violated" his statutory duty as an attorney to be truthful. The factual bases expressed in the letter for those opinions were (1) Ruiz "attempt[ed] to conceal" his "superior legal knowledge and education" from the Board and architectural committee, (2) Ruiz knew the Board and architectural committee did not know he was an attorney, and (3) when asked by a member of the architectural committee whether he was a lawyer, Ruiz responded by asking " 'if being a lawyer would be held against' " him.

Ruiz met his burden under the anti-SLAPP statute of presenting a prima facie case that the factual assertions supporting the opinions were demonstrably false. His July 2, 2003 letter and his declaration submitted in opposition to the anti-SLAPP motion support a prima facie conclusion he did not conceal he was an attorney. The letter stated: "You may recall, that I was specifically asked to put in writing our concerns and requests *after Mr. Green asked if I was a lawyer.* While I did not understand what my profession has to do with approval of our plans, I asked if being a lawyer would be held against me. No one answered that question. However, I was told the reason the committee suspected that I was an attorney was based upon representations made by the association's manager Jill Schwalbe. She stated that during two prior conversations I had with her I repeated verbatim her comments." Ruiz stated in his declaration submitted in opposition to the motion to strike that during his conversations with Schwalbe, HVCA's property manager, "Ms. Schwalbe learned that I was an attorney." In a declaration submitted in support of an ex parte application for relief from the discovery stay, Ruiz stated he disclosed to Schwalbe that he was an attorney.

The statements that Ruiz acted unconscionably and in violation of his ethical duties as a lawyer are not mere hyperbole, epithet, or "subjective expressions of disapproval, devoid of any factual content." (*Ferlauto v. Hamsher* (1999) 74 Cal.App.4th 1394, 1404 [88 Cal.Rptr.2d 843].) This becomes clear when the statements are viewed in context. The statements contend Ruiz violated a specific code section based upon identified conduct. The July 11 letter was written by an attorney in "legal verbiage," including citations to authority, giving the letter's opinion greater weight to the reader (cf. *Franklin, supra,* 116 Cal.App.4th at p. 389)—if the letter were, in fact, published.

In contrast, however, the allegedly libelous portions of the October 15 letter are just the kind of rhetorical hyperbole, epithets, and figurative statements that are nonactionable. The October 15 letter states Ruiz was seeking a "Shakespearian 'pound of flesh,' " making "cockamam[ie]" document inspection requests, and "virtually stalking and staring down the

directors at their regularly scheduled meetings." The term "virtually stalking" cannot fairly be interpreted as an accusation of a crime but, taken in context, was a metaphor used to describe Ruiz's conduct at the board meetings. (See *Franklin, supra,* 116 Cal.App.4th at p. 389 [statements that plaintiff " 'stole' " and " 'plagiarized' " data "appear in context as rhetorical hyperbole"]; see also *Letter Carriers v. Austin, supra,* 418 U.S. at pp. 283–284 [" 'traitor[s]' " understood to mean that plaintiffs' actions were reprehensible, not that plaintiffs had committed treason]; *Greenbelt Pub. Assn. v. Bresler* (1970) 398 U.S. 6, 13–14 [26 L.Ed.2d 6, 90 S.Ct. 1537] [" 'blackmail' " a vigorous epithet used to describe unreasonable negotiations]; *Rosenaur v. Scherer* (2001) 88 Cal.App.4th 260, 278–279 [105 Cal.Rptr.2d 674] [calling plaintiff "thief" and "liar" during political campaign was hyperbole].)

B. *The Litigation Privilege Does Not Protect the July 11 Letter.*

■ HVCA argues the July 11 letter and the October 15 letter are protected by the litigation privilege of Civil Code section 47, subdivision (b). The litigation privilege does not retroactively protect any and all communication preceding the litigation; the privilege applies from the point the contemplated litigation is seriously proposed in good faith for purposes of resolving the dispute. (*Edwards v. Centex Real Estate Corp.* (1997) 53 Cal.App.4th 15, 35 & fn. 10 [61 Cal.Rptr.2d 518].)[6] As that case notes, "[i]n the present litigious society, there is always at least the *potential* for a lawsuit any time a dispute arises between individuals or entities." (*Id.* at p. 33.) The privilege only arises "at the point in time when litigation is no longer a mere possibility, but has instead ripened into a *proposed proceeding* that is actually contemplated in good faith and under serious consideration as a means of obtaining access to the courts for the purpose of resolving the dispute." (*Id.* at p. 39.)

The potential for litigation existed, of course, from the outset of the dispute between Plaintiffs and HVCA. But when the July 11 letter was written, litigation had not been seriously considered, the dispute had not ripened into a proposed proceeding, and the parties were not negotiating under the actual threat of litigation. Ruiz's July 2, 2003 letter obliquely asserted the Board's actions exposed the Board to liability, but did not mention litigation. When the July 11 letter was written, neither Ruiz nor HVCA had written a demand

---

[6] In *Edwards v. Centex Real Estate Corp., supra,* 53 Cal.App.4th at page 35, the court stated that for the privilege to protect communications, "the contemplated litigation must be *imminent.*" The court inferred the element of imminence from the Second Restatement of Torts. (*Edwards v. Centex Real Estate Corp., supra,* at p. 35.) The litigation must be imminent, the *Edwards* court explained, because "[u]nless and until the parties are negotiating under the actual threat of impending litigation, the original justification for the litigation privilege of encouraging access to the courts can have no relevance to their communications." (*Ibid.*)

letter or otherwise seriously proposed litigation as a means for resolving their dispute. (See *Knoell v. Petrovich* (1999) 76 Cal.App.4th 164, 170–171 [90 Cal.Rptr.2d 162] [demand letter serving as condition precedent to litigation and all subsequent communications held privileged].) Ruiz had requested a "dialogue," and the July 11 letter was a response to his request, not a threat that litigation was under serious consideration.

Our conclusion that the litigation privilege does not protect the July 11 letter is consistent with our conclusion that letter falls within section 425.16, subdivision (e)(4). Only subdivision (e), clauses (1) and (2) of section 425.16 are parallel to and coextensive with the definition of privileged communication under Civil Code section 47, subdivision (b). (See *Church of Scientology v. Wollersheim, supra,* 42 Cal.App.4th at p. 650.) The anti-SLAPP legislation covers a broader definition of communications than the litigation privilege. Thus, while a communication protected by the litigation privilege necessarily would fall within section 425.16, subdivision (e)(1) or (2) (see *Briggs v. Eden Council for Hope & Opportunity, supra,* 19 Cal.4th 1106, 1115), the opposite is not true. A communication protected by the anti-SLAPP statute would not necessarily be protected by the litigation privilege. That is the case where, as here, the communication falls within section 425.16, subdivision (e)(4).

C. *Ruiz Failed to Meet His Burden of Proving Publication, but the Trial Court on Remand Must Reconsider Ruiz's Request for Discovery on the Issue of the Publication of July 11 Letter.*

A libel, to be actionable, must be published; i.e., communicated to a third person who understands its defamatory meaning. (5 Witkin, Summary of Cal. Law (10th ed. 2005) Torts, § 476.) Ruiz did not meet his burden of showing either the July 11 letter or the October 15 letter was published. Publication of the letter to the board members would be privileged under Civil Code section 47, subdivision (c) because they would be interested in the letter. Ruiz argues the initials "rs" found at the end of the July 11 letter suggest a third person with those initials typed the letter. But Ruiz did not present evidence that a person with the initials "rs" typed the letter, or that the person who typed the letter would not be a "person interested" under Civil Code section 47, subdivision (c).

Ruiz requested discovery on the issue of publication. On October 27, 2004, after HVCA filed the special motion to strike, he applied ex parte for an order, or for an order shortening time in which to bring a noticed motion, for

relief from the discovery stay in order to conduct discovery on the issue of publication. The record contains no order on the application. In ruling on the anti-SLAPP motion itself, the trial court did not have reason to reconsider Ruiz's request for discovery because the court denied the motion under the first prong without reaching the issue of probability of success on the libel cause of action.

■ Under subdivision (g) of section 425.16, the trial court may, for good cause, lift the discovery stay to permit specified discovery limited to the issues raised in the special motion to strike. (*Mattel, Inc. v. Luce, Forward, Hamilton & Scripps* (2002) 99 Cal.App.4th 1179, 1189–1190 [121 Cal.Rptr.2d 794].) Ruiz timely applied for discovery under subdivision (g) of section 425.16, and we will remand the case for the trial court to consider whether to permit discovery on the issue of publication of the July 11 letter only.

HVCA asserts, without citing authority, that Ruiz waived his right to challenge the denial of his request for discovery by failing to file his own notice of appeal from the denial of the anti-SLAPP motion, akin to a protective cross-appeal. In the case of a protective cross-appeal, the cross-appellant is appealing from a judgment, made appealable under section 904.1, subdivision (a), as protection in the event the appellate court reverses an order granting a new trial or judgment notwithstanding the verdict. (See Eisenberg et al., Cal. Practice Guide: Civil Appeals and Writs (The Rutter Group 2004) ¶¶ 3:169 to 3:171.1, pp. 3-62 to 3-63 (rev. # 1, 2004).) Here, there was no adverse appealable order or judgment from which Ruiz could file a notice of appeal. His request for discovery can and should be considered along with all the issues raised by HVCA's appeal from the order denying the anti-SLAPP motion.

### DISPOSITION

Ruiz failed to meet his burden of proving a probability of succeeding on his libel claim: He failed to show the July 11 letter had been published and the October 15 letter was defamatory. The letters were protected under section 425.16, subdivision (e)(4). Thus, we reverse the order denying HVCA's special motion to strike pursuant to section 425.16 and remand with the following directions.

Ruiz timely requested discovery on the issue of publication, and therefore we remand with directions for the trial court to reconsider Ruiz's request for discovery, but only as to the July 11 letter. If the trial court denies Ruiz's request for discovery, then it must grant HVCA's anti-SLAPP motion. If the trial court permits Ruiz to conduct discovery as to publication of the July 11 letter, then the trial court may reconsider HVCA's motion to strike with respect to that letter under the anti-SLAPP statute in light of discovery results.

Appellant to recover costs incurred on appeal.

Sills, P. J., and Bedsworth, J., concurred.

A petition for a rehearing was denied January 11, 2006, and on January 11, 2006, and January 13, 2006, the opinion was modified to read as printed above.