Filed 7/27/23  Cabot v. Gelder CA4/1

**NOT TO BE PUBLISHED IN OFFICIAL REPORTS**

California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.

COURT OF APPEAL, FOURTH APPELLATE DISTRICT

DIVISION ONE

STATE OF CALIFORNIA


| | |
|---|---|
| JASON CABOT,<br><br>　　Plaintiff and Appellant,<br><br>　　v.<br><br>JEFFREY L. GELDER,<br><br>　　Defendant and Respondent. | D079388<br><br><br>(Super. Ct. No. 37-2021-00004154-CU-DF-CTL) |


APPEAL from a judgment of the Superior Court of San Diego County, Keri G. Katz, Judge.  Reversed with directions.

Jason Cabot, in pro. per., for Plaintiff and Appellant.

Lewis Brisbois Bisgaard & Smith, Jeffry A. Miller, Ernest Slome, Lann McIntyre; Stratman & Williams-Abrego and Roger L. Popeney for Defendant and Respondent.


Jason Cabot appeals the judgment dismissing his action for defamation, false light, and infliction of emotional distress against Jeffrey L. Gelder after the trial court granted Gelder's special motion to strike the complaint as a strategic lawsuit against public participation (SLAPP).  Cabot

contends the court erroneously granted the motion because the e-mail sent by Gelder on which Cabot based his claims was not speech or petitioning activity protected by the anti-SLAPP statute and because he showed a probability of prevailing on the claims. Cabot also contends the court erroneously denied his ex parte application to conduct discovery needed to oppose the motion. We conclude Gelder's e-mail did not constitute speech or petitioning activity within the scope of the anti-SLAPP statute and reverse the judgment.

## I.

## BACKGROUND

Cabot lives in a seven-unit residential complex managed by a homeowners association (HOA). On December 12, 2020, he had a physical altercation at the complex with another resident. Both participants were taken to a hospital. Cabot was arrested and booked into county jail. No criminal charges were filed against him, and he was given a certificate of release stating his arrest shall be deemed a detention only.

On December 29, 2020, a member of the HOA's board of directors sent an e-mail to homeowners about the altercation. The director stated the board had met and decided it need not take any action. The board, "however, agreed to open up discussions with the entire community . . . to get a pulse on whether owners would like to take steps to increase security on the property," including "additional lighting, cameras or any other suggested actions deemed appropriate." The director stated the homeowners would not be meeting in person and asked them to respond to her e-mail.

On December 30, 2020, Gelder responded to the director's e-mail and sent copies to seven other e-mail addresses. At the top of the response, he wrote: "THIS RESPONSE IS NOT TO BE SHARED WITH [CABOT]." After

thanking the board for addressing the altercation between Cabot and the other resident, Gelder continued:

> "Having been [a] witness to a portion of this 'altercation' on December 12th both visually and audibly and viewing evidence the morning after, the more correct term is, pre-meditated viscous [*sic*] attack. I don't say this to scare anyone but to caution you to please be vigilant and extra careful. As you may know, the police, ambulance and fire dept. have been called to this address numerous times in the last two years.

> "What happened on December 12th is a criminal case. The detective who interviewed me suggested that we might all get a 'non-negative' retraining [*sic*] order, which means the person can speak to us but as soon as it becomes at all negative a report should be made and he must keep a distance.

> "The detective also stated that if we had at least one camera this could be an open and closed case. Now, there will be a hearing in February.

> "Therefore, I believe its [*sic*] a given that we don't want anything like this to happen again and a camera(s) and motion sensor lighting are a mandatory addition to the property.

> "If anyone has any questions or concerns, feel free to contact me."

Based in part on Gelder's e-mail, Cabot filed a complaint for damages against Gelder. In a count labeled "defamation," Cabot alleged Gelder falsely told their neighbors and others that he (Cabot) had assaulted a neighbor and committed crimes. In a count labeled "false light," Cabot alleged Gelder falsely implied Cabot was a dangerous person by telling their neighbors that police had been sent to his house on several occasions.[1] In a count labeled "infliction of

---

[1] "False light is a species of invasion of privacy, based on publicity that places a plaintiff before the public in a false light that would be highly offensive to a reasonable person, and where the defendant knew or acted in

3

emotional distress," Cabot alleged Gelder's statements to the neighbors were extreme and outrageous and Gelder intentionally or negligently caused Cabot to suffer severe emotional distress.

Gelder responded with a special motion to strike the complaint as a SLAPP. (Code Civ. Proc., § 425.16.) He argued, among other points, that the statements in his December 30, 2020 e-mail were made in furtherance of his constitutional right of petition or free speech in connection with a public issue or issue of public interest (*id.*, § 425.16, subd. (e)(4)), and that Cabot could not prevail on his claims because the statements underlying them were privileged (Civ. Code, § 47). In support of the anti-SLAPP motion, Gelder lodged several documents, including copies of his e-mail, the e-mail the HOA director sent the previous day, the police report of the physical altercation between Cabot and his neighbor, and a record of calls for police service to Cabot's address.

Cabot filed a motion to lift the stay of discovery triggered by the filing of the anti-SLAPP motion so that he could serve special interrogatories on Gelder and depose him concerning the basis for his statements about the December 12, 2020 altercation. (Code Civ. Proc., § 425.16, subd. (g).) The trial court granted the motion and allowed Cabot to serve four special interrogatories on Gelder and to depose him for three hours. Dissatisfied with the testimony Gelder gave during the deposition, Cabot filed an ex parte application to take additional discovery, which the court denied.

Cabot then filed opposition to the anti-SLAPP motion. He argued that Gelder's statements to other HOA members about the December 12, 2020

_____

reckless disregard as to the falsity of the publicized matter and the false light in which the plaintiff would be placed." (*Price v. Operating Engineers Local Union No. 3* (2011) 195 Cal.App.4th 962, 970.)

4

altercation did not constitute speech or petitioning activity within the scope of the anti-SLAPP statute. Cabot further argued that even if the statute covered Gelder's statements, the claims had sufficient merit to survive the motion because the statements were defamatory per se and cast Cabot in a false light, and because the common-interest privilege[2] did not shield Gelder from liability since he made the statements with malice and they went beyond what was necessary to the situation. As part of the opposition, Cabot submitted declarations from himself and his roommate describing the December 12, 2020 altercation, a copy of the certificate of release, and a copy of Gelder's deposition transcript.

In reply, Gelder repeated and expanded on the arguments in his initial papers that his December 30, 2020 e-mail fell within the scope of the anti-SLAPP statute. He added that the common-interest privilege (see fn. 2, *ante*) applied because he did not send the e-mail with actual malice.

The trial court held a hearing on the anti-SLAPP motion, took the matter under submission, and later issued a minute order granting the motion. The court ruled Gelder's e-mail "was written 'in connection with a public issue or an issue of public interest,'" namely, the HOA's solicitation of input from homeowners about the need for additional security features at the residential complex, and therefore constituted protected activity under the anti-SLAPP statute. (Code Civ. Proc., § 425.16, subd. (e)(4).) The court further ruled the common-interest privilege (see fn. 2, *ante*) applied to the e-

---

[2] "A privileged publication or broadcast is one made . . . [i]n a communication, without malice, to a person interested therein, (1) by one who is also interested, or (2) by one who stands in such a relation to the person interested as to afford a reasonable ground for supposing the motive for the communication to be innocent, or (3) who is requested by the person interested to give the information." (Civ. Code, § 47, subd. (c).)

mail and defeated all of Cabot's claims.  The court struck Cabot's complaint and entered a judgment of dismissal.

## II.

## PARTIES' CONTENTIONS

Cabot asks us to reverse the judgment, the order granting the anti-SLAPP motion, and the order denying his ex parte application to conduct additional discovery.  Cabot contends the trial court should have denied the motion because:  (1) Gelder's statements about him in the December 30, 2020 e-mail to other homeowners do not qualify as activity protected by the anti-SLAPP statute; (2) Gelder made other defamatory statements outside the HOA context; (3) Cabot submitted evidence showing the statements in the e-mail were defamatory per se and cast him in a false light; and (4) the common-interest privilege did not apply since Gelder provided information that had not been requested in the e-mail to which he responded and a trier of fact could conclude he acted with actual malice.  Cabot also contends the court should have allowed him to take additional discovery to obtain evidence of other statements Gelder had made about him that he needed to establish a prima facie case.

Gelder asks us to affirm the judgment.  He contends the trial court correctly ruled the anti-SLAPP statute applied, because his December 30, 2020 response to the e-mail from the HOA director about the December 12 physical altercation involving Cabot and the HOA's need for additional security concerned a public issue or an issue of public interest within the meaning of Code of Civil Procedure section 425.16, subdivision (e)(4).  Gelder further contends Cabot did not meet his burden to show a probability of prevailing on his claims, because he did not establish the claims arose out of statements other than those in the December 30, 2020 e-mail, and that e-mail

6

fell within the scope of the common-interest privilege. As to the additional discovery Cabot had requested, Gelder contends the ex parte application was procedurally and substantively defective, and Cabot has not shown the trial court abused its discretion in denying the application.

III.

DISCUSSION

We begin by setting out some general principles regarding anti-SLAPP motions. "The anti-SLAPP statute enables defendants to quickly terminate meritless actions against them that are based on their constitutionally protected rights to speak freely and petition for redress of grievances." (*Dziubla v. Piazza* (2020) 59 Cal.App.5th 140, 147.) To accomplish that goal, the statute provides: "A cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States Constitution or the California Constitution in connection with a public issue shall be subject to a special motion to strike, unless the court determines that the plaintiff has established that there is a probability that the plaintiff will prevail on the claim." (Code Civ. Proc., § 425.16, subd. (b)(1).)[3]

---

[3]  The motion may, but need not, target an entire cause of action or count as pleaded in the complaint. "When the Legislature declared that a 'cause of action' arising from activity furthering the rights of petition or free speech may be stricken unless the plaintiff establishes a probability of prevailing, it had in mind *allegations of protected activity that are asserted as grounds for relief*. The targeted claim must amount to a 'cause of action' in the sense that it is alleged to justify a remedy. By referring to a 'cause of action against a person arising from *any act* of that person in furtherance of' the protected rights of petition and speech, the Legislature indicated that *particular* alleged acts giving rise to a claim for relief may be the object of an anti-SLAPP motion." (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 395 (*Baral*).)

7

Resolution of an anti-SLAPP motion typically involves two steps. The defendant moving to strike a cause of action as a SLAPP must first show the act underlying the claim falls within one of the four categories of protected activity listed in Code of Civil Procedure section 425.16, subdivision (e). (*Baral*, *supra*, 1 Cal.5th at pp. 384, 396; *Bowen v. Lin* (2022) 80 Cal.App.5th 155, 160 (*Bowen*).) If the defendant makes that showing, the burden then shifts to the plaintiff to show the targeted cause of action is legally sufficient and is supported by evidence that, if credited, would sustain a judgment for the plaintiff. (*Baral*, at pp. 384, 396; *Bowen*, at p. 160.)

"Only a cause of action that satisfies *both* prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning *and* lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 (*Navellier*); accord, *Bowen*, *supra*, 80 Cal.App.5th at p. 160.) The trial court's decision on both prongs is subject to de novo review on appeal. (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1250; *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 796; *Starr v. Ashbrook* (2023) 87 Cal.App.5th 999, 1018.)

We turn now to whether Gelder's December 30, 2020 e-mail constituted activity protected by the anti-SLAPP statute. The trial court ruled that because Gelder sent his e-mail "in response to a solicitation from the [HOA] in its efforts to assess the need for 'additional lighting, cameras or any other suggested actions' or 'potential actions' following the incident of December 12, 2020," the e-mail "was written 'in connection with a public issue or an issue of public interest' " and thus constituted protected activity under Code of Civil Procedure section 425.16, subdivision (e)(4). On appeal, Gelder relies exclusively on the same statutory provision in support of his argument that Cabot's claims arose from protected activity "because Gelder's email

8

addresse[d] the community concern about safety and the need for additional security measures."[4]  We disagree.  As we shall explain, Gelder's e-mail was a private communication about a private matter; it was not "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech *in connection with a public issue or an issue of public interest*."  (Code Civ. Proc., § 425.16, subd. (e)(4), italics added.)

The anti-SLAPP statute does not define "public issue" or "issue of public interest," but the courts have given the phrases meaning.[5]  "Public

---

[4]  In the trial court, Gelder also argued his e-mail constituted protected activity because it was made "before," or "in connection with an issue under consideration or review by," a "legislative, executive, or judicial body, or any other official proceeding authorized by law."  (Code Civ. Proc., § 425.16, subd. (e)(1), (2).)  The court correctly rejected that argument, and Gelder has not renewed it on appeal.  (See *Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722, 732 [HOA "meetings fall outside the scope of official proceedings"].)  Gelder further argued in the trial court that his e-mail constituted protected activity because it was "made in a place open to the public or a public forum in connection with an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e)(3).)  Although the court noted the argument, it neither accepted nor rejected it, apparently because it concluded the e-mail was sent "in connection with a public issue or an issue of public interest."  (*Id.*, § 425.16, subd. (e)(4).)  Gelder argues on appeal that whether or not his e-mail was speech in a public forum, it qualifies as protected activity because it concerned a public issue.  (See *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 897 (*Wilbanks*) [Code Civ. Proc., § 425.16, subd. (e)(4) "includes *conduct* in furtherance of free speech rights, regardless whether that conduct occurs in a place where ideas are freely exchanged"].)  As we explain in the text, however, the e-mail involved no public issue or issue of public interest.

[5]  Courts have attributed no substantive difference to the quoted phrases and have used them interchangeably.  (See, e.g., *Clarity Co. Consulting, LLC v. Gabriel* (2022) 77 Cal.App.5th 454, 463; *Colyear v. Rolling Hills Community Assn. of Rancho Palos Verdes* (2017) 9 Cal.App.5th 119, 130-131 (*Colyear*); *Wilbanks*, *supra*, 121 Cal.App.4th at p. 898; *Du Charme v.*

interest" is not limited to governmental matters and includes private conduct. (*Grenier v. Taylor* (2015) 234 Cal.App.4th 471, 482; *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468, 479 (*Damon*).) "[A] matter of public interest should be something of concern to a substantial number of people," not just "to the speaker and a relatively small, specific audience." (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1132 (*Weinberg*); accord, *Grenier*, at p. 481.) To decide whether speech or petitioning activity concerns a public issue, courts consider "whether the subject of the speech or activity 'was a person or entity in the public eye' or 'could affect large numbers of people beyond the direct participants' "; and "whether the activity 'occur[red] in the context of an ongoing controversy, dispute or discussion,' " or " 'affect[ed] a community in a manner similar to that of a governmental entity.' " (*FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 145-146 (*FilmOn.com*).) If "the issue is not of interest to the public at large, but rather to a limited, but definable portion of the public (a private group, organization, or community), the constitutionally protected activity must, at a minimum, occur in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance." (*Du Charme, supra,* 110 Cal.App.4th at p. 119; accord, *Li v. Jin* (2022) 83 Cal.App.5th 481, 496 (*Li*).)

Considering the factors identified above, we conclude Gelder's December 30, 2020 e-mail did not concern "a public issue" or "an issue of public interest." (Code Civ. Proc., § 425.16, subd. (e)(4).) Nothing in the record suggests Cabot, who is the subject of the allegedly defamatory

---

*International Brotherhood of Electrical Workers* (2003) 110 Cal.App.4th 107, 119 (*Du Charme*).) We do the same.

10

statements in the e-mail, was " 'in the public eye.' " (*FilmOn.com*, *supra*, 7 Cal.5th at p. 145.) Allegedly defamatory statements about "an individual who had previously received no public attention or media coverage" do not concern an issue of public interest. (*Rivero v. American Federation of State, County and Municipal Employees, AFL-CIO* (2003) 105 Cal.App.4th 913, 924 (*Rivero*); compare *ibid.* with *Sipple v. Foundation for Nat. Progress* (1999) 71 Cal.App.4th 226, 239 [allegedly defamatory statements about "nationally known figure" concerned issue of public interest].)

Gelder's comments that the physical altercation between Cabot and the neighbor was "pre-meditated" and "vi[ci]ous" and that "police, ambulance and fire dept. have been called to this address numerous times in the last two years" do not concern conduct that " 'could affect large numbers of people beyond the direct participants.' " (*FilmOn.com*, *supra*, 7 Cal.5th at p. 145; compare *Rivero*, *supra*, 105 Cal.App.4th at p. 925 [alleged nepotism and other wrongful conduct of supervisor of eight custodians "simply do not constitute matters of public interest"] with *Macias v. Hartwell* (1997) 55 Cal.App.4th 669, 673-674 [allegedly libelous statements about candidate's qualifications to serve as president of 10,000-member union made during election campaign concerned public issue].) Such matters are of concern not to "a substantial number of people," but only "to the speaker and a relatively small, specific audience," namely, the residents of the seven-unit HOA to which Cabot and Gelder belonged. (*Weinberg*, *supra*, 110 Cal.App.4th at p. 1132; see *id.* at p. 1135 [accusations of criminal conduct made "to discredit [token collector] in the eyes of a relatively small group of fellow collectors" were not matters of public interest].)

Gelder's e-mail was part of an " 'ongoing . . . discussion' " (*FilmOn.com*, *supra*, 7 Cal.5th at p. 145) among homeowners about the need for "additional

11

lighting, cameras or any other suggested actions deemed appropriate" "to increase security on the property." Such an informal discussion among the members of a seven-unit HOA, however, neither concerned "a topic of widespread, public interest" (*Rivero, supra,* 105 Cal.App.4th at p. 924) nor " 'affect[ed] a community in a manner similar to that of a governmental entity' " (*FilmOn.com*, at pp. 145-146). Even if the need for additional security measures in such a small community qualifies as a matter of public interest (call it "public safety"), there must be " 'some degree of closeness' between the challenged statements and the asserted public interest" for the anti-SLAPP statute to apply. (*Id.* at p. 150.) The contents of Gelder's e-mail that Cabot alleges defamed him and cast him in a false light—Gelder's characterization of the physical altercation involving Cabot as "pre-meditated" and "vi[ci]ous," and his reminder that the police, ambulance, and fire department had been called to Cabot's home multiple times in the past— did not themselves " 'contribute to the public debate' " on the issue of public safety and therefore are not protected by the anti-SLAPP statute. (*Ibid.*; see *Musero v. Creative Artists Agency, LLC* (2021) 72 Cal.App.5th 802, 820 ["connecting a broad and amorphous public interest to a specific dispute is not enough"].)

We are aware that based on the same factors we have just considered, "several courts have found protected conduct in the context of disputes within a homeowners association." (*Colyear, supra,* 9 Cal.App.5th at p. 131.) Gelder relies on decisions of some of those courts. Those decisions are distinguishable, however, and do not support the conclusion that Cabot's tort claims arose from activity protected by the anti-SLAPP statute.

In the cases Gelder cites, courts held a dispute was a SLAPP when the underlying conduct involved HOA governance or an issue of concern to a

12

large number of people living in an HOA. For example, allegedly defamatory statements of homeowners in a large HOA about a former manager's competence and whether the HOA should remain self-governing or hire a professional manager were held to constitute protected activity, because "the statements were made in connection with . . . [b]oard elections and recall campaigns" and "concerned the very manner in which this group of more than 3,000 individuals would be governed—an inherently political question of vital importance to each individual and to the community as a whole." (*Damon*, *supra*, 85 Cal.App.4th at p. 479.) Allegedly libelous statements about the board's governance and enforcement of rules in an HOA of more than 500 members were held to be protected because those topics were "issues of concern to the many [HOA] members." (*Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th 1456, 1470; see *Colyear*, *supra*, 9 Cal.App.5th at pp. 125, 132-133 [homeowner's invocation of tree-trimming dispute resolution process was protected activity because HOA's authority to enforce tree-trimming covenants for 755 lots was of interest to entire HOA].) A homeowner's speaking out against and petition to recall directors of the board of an HOA were also held to involve matters of public interest because the board "was in a position to impact the lives of many individuals through its decisionmaking process." (*Country Side Villas Homeowners Assn. v. Ivie* (2011) 193 Cal.App.4th 1110, 1118; see *Lee v. Silveira* (2016) 6 Cal.App.5th 527, 530, 540 [debate and votes of directors of board of 440-unit HOA on approval of roofing project and management contract were protected activities because they affected multiple buildings and most HOA members].)

Unlike the speech or petitioning activity in the cases just discussed, the statements about Cabot in Gelder's e-mail did "not involve board elections, recall campaigns, . . . who should be the manager of the [HOA]," or "a

13

governance issue of potential interest to all homeowners." (*Turner v. Vista Pointe Ridge Homeowners Assn.* (2009) 180 Cal.App.4th 676, 684, 687 (*Turner*) [distinguishing some cases on which Gelder relies].)  Rather, Gelder's statements that Cabot's physical altercation with the neighbor was "pre-meditated" and "vi[ci]ous" and that police had been called to Cabot's home numerous times asserted or implied that Cabot was a dangerous criminal.  Claims based on allegedly false accusations of crime do not arise from activity protected by the anti-SLAPP statute where, as here, the plaintiff is "a private, anonymous" party and the accusations were made only to "a small group of other private parties." (*Weinberg*, *supra*, 110 Cal.App.4th at p. 1132; accord, *Abuemeira v. Stephens* (2016) 246 Cal.App.4th 1291, 1298.)  It does not matter that Gelder made the accusations to other homeowners in response to an e-mail from the HOA, because "[n]ot every mundane communication between a homeowners association and a homeowner gives rise to a freedom of speech issue." (*Turner*, at p. 679.) Since Gelder "has failed to demonstrate that his dispute with [Cabot] was anything other than a private dispute between private parties" (*Weinberg*, at p. 1134), Gelder has not met his burden to show Cabot's claims arose from "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest" (Code Civ. Proc., § 425.16, subd. (e)(4)).

Our conclusion that Cabot's claims did not arise from speech or petitioning activity protected by the anti-SLAPP statute means his claims were not subject to being stricken under the statute. (*Navellier*, *supra*, 29 Cal.4th at p. 89; *Verceles v. Los Angeles Unified School Dist.* (2021) 63 Cal.App.5th 776, 784.)  We therefore need not, and do not, consider whether Cabot established a probability of prevailing on the claims (*City of*

14

*Cotati v. Cashman* (2002) 29 Cal.4th 69, 80-81; *Turner, supra,*
180 Cal.App.4th at p. 688), or whether the trial court abused its discretion in
denying his ex parte application to conduct additional discovery he claimed
he needed to obtain evidence to oppose the anti-SLAPP motion (*Wang v. Wal-
Mart Real Estate Business Trust* (2007) 153 Cal.App.4th 790, 811).

## IV.

## DISPOSITION

The judgment is reversed. The matter is remanded with directions to
the trial court to vacate its order granting the anti-SLAPP motion and to
enter a new order denying the motion. Cabot shall recover costs on appeal.


IRION, J.

WE CONCUR:


HUFFMAN, Acting P. J.


BUCHANAN, J.