[No. G040480. Fourth Dist., Div. Three. Dec. 22, 2009.]

JEFFREY M. TURNER et al., Plaintiffs and Appellants, v.
VISTA POINTE RIDGE HOMEOWNERS ASSOCIATION, Defendant and
Respondent.

**COUNSEL**

Law Offices of Steven R. Young and Jim P. Mahacek for Plaintiffs and Appellants.

Litchfield Cavo, Edward D. Vaisbort and Melinda W. Ebelhar for Defendant and Respondent.

**OPINION**

**MOORE, Acting P. J.**—Vista Pointe Ridge Homeowners Association (Association) brought a successful Code of Civil Procedure section 425.16 motion to strike the complaint of Jeffrey M. Turner and Nanette K. Turner.[1] The Turners appeal. They contend the trial court erred in construing all matters in connection with a homeowners association's application of architectural guidelines as matters to which section 425.16 applies. We agree. Not every mundane communication between a homeowners association and a homeowner gives rise to a freedom of speech issue. Section 425.16, subdivision (e)(4), at issue here, does not come into play unless the right of free speech or the right to petition is involved. The cause of action itself must be based on the speech or petitioning activity. If neither of those rights is at stake, section 425.16, subdivision (e)(4) is inapplicable, irrespective of whether the subject of the dispute may otherwise be a matter of public interest. We reverse.

I

FACTS

The Turners, as trustees of their living trust, own residential real property in Aliso Viejo, California. The real property is subject to conditions, covenants and restrictions (CC&R's) that require homeowners to obtain the approval of the Association before constructing certain improvements on their

---

[1] All subsequent statutory references are to the Code of Civil Procedure unless otherwise specifically stated.

property. The Turners obtained Association approval for an addition to their home and for substantial outdoor improvements, including a casita. The parties agree that the approval specified the casita could not exceed 10 feet six inches in height.

After undertaking construction, the Turners concluded that they would need to increase the height of the casita. According to their own admission, they increased the height by about a foot or a foot and a half without first obtaining a variance from the Association. As they further acknowledge, a neighbor complained about the height of the casita, and purportedly threatened to sue the Association because the casita constituted an unreasonable view obstruction. The Association was reluctant to grant the variance, and was concerned about the attorney fees it was incurring in addressing the compliance matter. The Turners say the Association at one point offered to grant the variance if they held the Association harmless against any claims by the neighbor in question and if they paid $15,000 in Association attorney fees. However, the Turners did not accept the offer, because they felt the variance should not be conditioned on the payment of money.

In addition to the dispute concerning the height of the casita, there were issues about whether a number of other improvements the Turners had constructed were approved by the Association or were in conformity with the Association's architectural guidelines. The Turners also complain that the Association ultimately levied a $23,732.48 reimbursement assessment in connection with the disputed matters. The record contains some evidence showing that the Association sought that amount in administrative costs and attorney fees incurred in what the Association deemed to be an enforcement matter. The Turners also say that the Association demanded they pay $150 to remove a tree from the common area, a matter they contend is not their responsibility. On that point, the record contains a copy of a letter indicating that the tree removal was a condition of approval of the Turners' landscape plans, although the reason for the condition is not apparent.

The Turners filed suit against the Association. They asserted seven causes of action: (1) breach of contract; (2) declaratory relief; (3) nuisance; (4) breach of the implied covenant of good faith and fair dealing; (5) violation of Civil Code section 1378, concerning homeowners association architectural review procedures; (6) violation of Business and Professions Code section 17200, pertaining to unfair business practices; and (7) breach of fiduciary duty.

The Association filed a section 425.16 motion to strike the Turners' complaint. In its motion, the Association argued that each cause of action was

based on its activities arising out of the controversy pertaining to the Turners' architectural plans. It further argued that, based on *Damon v. Ocean Hills Journalism Club* (2000) 85 Cal.App.4th 468 [102 Cal.Rptr.2d 205] (*Damon*) and *Ruiz v. Harbor View Community Assn.* (2005) 134 Cal.App.4th 1456 [37 Cal.Rptr.3d 133] (*Ruiz*), all of those activities constituted protected "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest," within the meaning of section 425.16, subdivision (e)(4).

The court granted the Association's motion. It noted that each cause of action arose out of a dispute over the architectural guidelines and related to communications from the Association pertaining to purported noncompliance with those guidelines. It also observed that the dispute with the neighbor pertained to the same issues. The court held that, under *Ruiz, supra,* 134 Cal.App.4th 1456, the dispute, being one about architectural guidelines, was a public issue. It further held that the burden had shifted to the Turners to present evidence establishing a probability that they would prevail on their claims, and that they had not met their burden. This appeal ensued.

## II

## DISCUSSION

### A. *Introduction*

The Turners argue that, contrary to the court's apparent construction of *Ruiz, supra,* 134 Cal.App.4th 1456, section 425.16 does not apply to all homeowners association conduct in connection with design review matters. They also maintain that the communications from the Association in this particular matter were not protected activity under section 425.16. They explain, inter alia, that their causes of action did not challenge the Association's communicative conduct. Finally, the Turners assert that even if section 425.16 were applicable, they met their burden to show a probability of prevailing on their causes of action. The Association, on the other hand, maintains that its communications with the Turners constituted protected activities under section 425.16, inasmuch as they arose out of the enforcement of CC&R's and thus were public issues within the meaning of section 425.16, subdivision (e)(4). It also contends that the Turners did not establish a probability of prevailing on their causes of action.

■ "Section 425.16 provides for a special motion to strike '[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or

California Constitution in connection with a public issue.' (§ 425.16, subd. (b)(1).) 'The Legislature enacted the anti-SLAPP statute to protect defendants, including corporate defendants, from interference with the valid exercise of their constitutional rights, particularly the right of freedom of speech and the right to petition the government for the redress of grievances.' [Citation.]" (*Ruiz, supra*, 134 Cal.App.4th at p. 1466.)

"In analyzing a section 425.16 motion, the court engages in a two-step process. 'First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity.' [Citation.] The moving defendant meets this burden by showing the act underlying the plaintiff's cause of action comes within section 425.16, subdivision (b)(1). [Citation.] If the defendant meets this initial burden, the burden then shifts and the plaintiff must show a probability of prevailing on the claim. [Citation.] The plaintiff must demonstrate the complaint is both legally sufficient and is supported by a prima facie showing of facts sufficient to sustain a favorable judgment if the evidence submitted by the plaintiff is given credit. [Citation.] [¶] We review de novo whether section 425.16 protects the subject speech and whether [the plaintiff] demonstrated a probability he would prevail on his . . . cause of action. [Citation.]" (*Ruiz, supra*, 134 Cal.App.4th at p. 1466.)

B. *Protected Activity*

■ "A defendant can meet his or her burden [of showing that the challenged cause of action arises from protected activity] by demonstrating the acts underlying the plaintiff's cause of action fit within one of the categories of section 425.16, subdivision (e). [Citation.] Section 425.16, subdivision (e) defines an act in furtherance of the defendant's right of petition or free speech in connection with a public issue to include: '(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest.' " (*Ruiz, supra*, 134 Cal.App.4th at pp. 1466–1467.) At issue here is subdivision (e)(4), on which the Association based its motion to strike.

The Association contends that section 425.16, subdivision (e)(4) applies whenever the issue concerns the conduct of a homeowners association in discharging its architectural review obligations. The Association cites *Damon, supra*, 85 Cal.App.4th 468 and *Ruiz, supra*, 134 Cal.App.4th 1456 for that proposition. However, it reads those two opinions too broadly.

*Damon, supra*, 85 Cal.App.4th 468 involved a defamation action brought by a former manager of a homeowners association. (*Id.* at p. 471.) In that case, a number of homeowners had been unhappy with the plaintiff's management style and had wanted a different manager for their homeowners association. To express their views and garner support for their positions, they prepared editorials, articles and letters to the editor that were published in a newsletter circulated to homeowners association members and others. Certain members of the homeowners association board of directors spoke critically of the plaintiff at board meetings and one of them wrote memoranda criticizing the plaintiff's performance. (*Id.* at p. 472.) Ultimately, the plaintiff's contract term ended and he was replaced. The plaintiff filed suit against two board members who had been critical of him, certain homeowners association members whose articles or letters had been published in the newsletter, and the publisher of the newsletter. (*Id.* at p. 473.) The trial court granted the defendants' section 425.16 motion to strike the plaintiff's complaint, finding that the complaint arose out of the defendants' exercise of their free speech rights with respect to a public issue. (*Damon, supra*, 85 Cal.App.4th at p. 473.)

The appellate court affirmed, holding that the defamatory statements identified in the complaint fell within the third statutory category enumerated in section 425.16, subdivision (e)(3): " 'any written or oral statement or writing made in a place open to the public or a public forum in connection with an issue of public interest . . . .' [Citation.]" (*Damon, supra*, 85 Cal.App.4th at p. 474, fn. omitted.) The court directed its attention to two issues: (1) whether the defamatory statements were made in a public forum; and (2) whether the defamatory statements concerned matters of public interest. (*Id.* at pp. 475, 479.) It answered each question in the affirmative. (*Id.* at pp. 474–475.)

The parties here focus on the portion of *Damon, supra*, 85 Cal.App.4th 468 having to do with the public interest issue. In construing the topics of the purportedly defamatory statements as " 'issue[s] of public interest,' " within the meaning of section 425.16, subdivision (e)(3), the court said: "The definition of 'public interest' within the meaning of the anti-SLAPP statute has been broadly construed to include not only governmental matters, but also private conduct that impacts a broad segment of society and/or that

affects a community in a manner similar to that of a governmental entity. [Citations.] ' "[M]atters of public interest . . . include activities that involve private persons and entities, especially when a large, powerful organization may impact the lives of many individuals." ' [Citation.]" (*Damon, supra,* 85 Cal.App.4th at pp. 478, 479.)

The *Damon* court observed that the allegedly defamatory statements had to do with whether the homeowners should engage in self-government or should utilize a professional management company, and whether the plaintiff was competent to manage the homeowners association. The statements concerned issues of public interest because "they concerned the very manner in which [a] group of more than 3,000 individuals would be governed—an inherently political question of vital importance to each individual and to the community as a whole. [Citation.]" (*Damon, supra,* 85 Cal.App.4th at p. 479.) Furthermore, the statements pertained to political matters, inasmuch as they were made in the context of homeowners association board elections and recall campaigns. The court observed that " '[t]he right to speak on political matters is the quintessential subject of our constitutional protections of the right of free speech.' " (*Ibid.*)

*Damon, supra,* 85 Cal.App.4th 468 is distinguishable from the matter before us. Although the underlying litigation here concerns a homeowners association, it does not involve board elections, recall campaigns, or who should be the manager of the homeowners association. It simply pertains to the interaction between homeowners and a homeowners association with respect to the homeowners' desired improvements. We are given no reason to believe that this is of interest to any homeowners other than the Turners and the one neighbor whose view may be affected by the height of the casita.

More significantly, *Damon, supra,* 85 Cal.App.4th 468 is distinguishable because it clearly centered upon the right of free speech. The plaintiff sued over the publication, in a newsletter, of articles, editorials, and letters to the editor, and the making of certain other allegedly defamatory statements at televised homeowners association board meetings. (*Id.* at pp. 472, 475.) Implicitly, it was the plaintiff's attack against the right of free speech that prompted the section 425.16 motion.

■ As the *Damon* court explained: "In 1992, the Legislature enacted section 425.16 to provide a procedure for a court 'to dismiss at an early stage nonmeritorious litigation meant to chill the valid exercise of the constitutional rights of freedom of speech and petition in connection with a public issue. [Citation.]' [Citation.] This type of nonmeritorious litigation is referred to

under the acronym SLAPP, or strategic lawsuit against public participation. [Citation.] In 1997, the Legislature added a provision to section 425.16 mandating that courts 'broadly' construe the anti-SLAPP statute to further the legislative goals of encouraging participation in matters of public significance and discouraging abuse of the judicial process. (§ 425.16, subd. (a).)" (*Damon, supra*, 85 Cal.App.4th at p. 473.)

The Association in the case before us endeavors to characterize the Turners' complaint as an effort to chill the exercise of free speech. The Association maintains that it had made perfectly clear to the Turners that it would not approve a height exceeding 10 feet six inches for the casita and that, knowing this, the Turners deliberately built to the height they desired and then tried to bully the Association into approving a fait accompli. It says that the Turners' filing of meritless litigation created a "classic 'SLAPP' situation" by driving up the costs of the dispute and trying to wear the Association down.

Although the filing of the lawsuit likely did have the effect of driving up the costs of the dispute, whether one party has increased the costs of the dispute is not the dispositive question. The question is whether the Association's actions that gave rise to the dispute, and upon which the Turners' causes of action are based, were taken in furtherance of the right of free of speech. (*Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66 [124 Cal.Rptr.2d 507, 52 P.3d 685] (*Equilon*).) Unlike the situation in *Damon, supra*, 85 Cal.App.4th 468, there is no allegation here that defamatory statements were published in a newsletter or made at a televised meeting. Rather, the Turners' causes of action are for breach of contract, declaratory relief, nuisance, bad faith, breach of fiduciary duty and the violation of certain statutory provisions, arising out of the Association's activities in connection with CC&R's compliance and enforcement issues. Nothing in *Damon, supra*, 85 Cal.App.4th 468 leads us to the conclusion that the Turners' causes of action are based on any action the Association took in furtherance of its right of free speech.

The other case upon which the Association relies heavily, *Ruiz, supra*, 134 Cal.App.4th 1456, bears more factual similarity to the case before us, but is nonetheless distinguishable as well. In *Ruiz*, the plaintiff homeowners sought the approval of the homeowners association's architectural committee for the construction of a new dwelling. (*Id.* at p. 1462.) The architectural committee sought more than a dozen modifications of the homeowners' plans, including a reduction of the square footage of the dwelling. One of the plaintiffs (Ruiz) attended certain meetings of the architectural committee and the homeowners

association board and subsequently sent them correspondence concerning the rejected plans. In his correspondence, Ruiz asserted that the decisions of the architectural committee were arbitrary and capricious, and that the guidelines were applied inconsistently and had been changed without notice to the homeowners. (*Id.* at p. 1463.) Additional correspondence was exchanged, including two letters of particular significance in the litigation.

The homeowners association's attorney sent a letter to Ruiz, himself a lawyer, asserting that his conduct as a lawyer was "reprehensible," "unconscionable," and in violation of certain laws. (*Ruiz, supra,* 134 Cal.App.4th at pp. 1463–1464.) The same individual sent a second letter complaining about Ruiz's endless and frivolous queries, and asserting that Ruiz was harassing the members of the homeowners association board of directors and " 'virtually stalking and staring down the directors at their regularly scheduled meetings.' " (*Id.* at pp. 1464–1465.) The plaintiffs filed suit alleging nine causes of action, including libel with respect to Ruiz. (*Id.* at p. 1465.) The libel cause of action was based on these two letters. (*Ibid.*)

The homeowners association filed a section 425.16 motion to strike, directed most particularly to the libel cause of action. The trial court denied the motion on the ground that the two letters were not covered by section 425.16. (*Ruiz, supra,* 134 Cal.App.4th at p. 1465.) This court reversed and remanded. (*Id.* at pp. 1475–1476.)

■ We held that the two letters fell within the ambit of section 425.16, subdivision (e)(4), pertaining to "conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." (§ 425.16, subd. (e)(4); see *Ruiz, supra,* 134 Cal.App.4th at p. 1467.) We observed that the term "public interest" had been construed broadly to include private conduct having an impact on a broad segment of society. (*Ruiz, supra,* 134 Cal.App.4th at p. 1468.) We also noted that when the matter is of interest not to the public at large, but only to a limited portion of the public, the "public interest" requirement of subdivision (e)(4) is met if the protected activity " 'occur[s] in the context of an ongoing controversy, dispute or discussion, such that it warrants protection by a statute that embodies the public policy of encouraging *participation* in matters of public significance.' [Citation.]" (*Ruiz, supra,* 134 Cal.App.4th at p. 1468.) We explained that the plaintiffs were involved in a dispute of interest to the members of the homeowners association—a definable portion of the public. (*Ibid.*) The dispute involved homeowners association governance and "whether the architectural guidelines had been

evenhandedly enforced, a matter of concern to [homeowners association] members." (*Id.* at p. 1470.)

Because the dispute in *Ruiz, supra,* 134 Cal.App.4th 1456 involved a dispute with a homeowners association arising out of architectural plans, and we held that it was a matter of public interest within the meaning of section 425.16, subdivision (e)(4), the Association in the matter before us construes the case as standing for the proposition that all litigation somehow involving any communication between a homeowners association and a homeowner about architectural guidelines is subject to a section 425.16 motion to strike. The case should not be read so expansively.

In *Ruiz, supra,* 134 Cal.App.4th 1456, there was a question of whether the architectural guidelines were evenhandedly enforced, and that was a governance issue of potential interest to all homeowners, giving rise to a matter of public interest. Also, the statements that formed the basis of the dispute in *Ruiz* gave rise to a defamation cause of action, in other words, a free speech concern. (*Id.* at pp. 1461, 1466.) Although the allegedly defamatory statements at issue had not been published in a newsletter or newspaper, we noted that section 425.16 could apply to even private communications, citing *Averill v. Superior Court* (1996) 42 Cal.App.4th 1170, 1175 [50 Cal.Rptr.2d 62] (*Averill*). (*Ruiz, supra,* 134 Cal.App.4th at p. 1467.) It is important to note, however, that the cause of action in *Averill*, just as in *Ruiz*, arose out of purportedly defamatory statements, and thereby implicated a freedom of speech issue. (*Averill, supra,* 42 Cal.App.4th at pp. 1172–1173 [alleged slanderous statements in opposition to battered women's shelter].) In the case before us, the causes of action do not involve freedom of speech concerns.

■ "[S]ection 425.16 requires every defendant seeking its protection to demonstrate that the subject cause of action is in fact one 'arising from' the defendant's protected speech or petitioning activity. (§ 425.16, subd. (b).)" (*Equilon, supra,* 29 Cal.4th at p. 66.) Put another way, "the critical consideration is whether the cause of action is *based on* the defendant's protected free speech or petitioning activity. [Citations.]" (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89 [124 Cal.Rptr.2d 530, 52 P.3d 703].) " ' "[T]he act underlying the plaintiff's cause" or "the act which forms the basis for the plaintiff's cause of action" must *itself* have been an act in furtherance of the right of petition or free speech.' [Citation.]" (*Equilon, supra,* 29 Cal.4th at p. 66.)

■ In this case, there is no indication that the acts in question were undertaken in furtherance of the right of petition or free speech. The causes of

action, as described in the complaint, arose out of the Association's purported unwillingness to grant a variance, demand that money be paid in exchange for a variance, demand that various disputed improvements be removed, levy of a reimbursement assessment, failure to comply with the CC&R's, and demand that the Turners pay to remove a tree located in the common area. It is true that certain Association demands were made in writing. But the mere fact that the demands were put in writing did not convert the Association's acts in connection with CC&R's enforcement into acts in furtherance of the right of free speech. In *Ruiz, supra,* 134 Cal.App.4th 1456, the act of expressing oneself in writing gave rise to a libel cause of action—a matter involving free speech. Here, the act of putting demands concerning CC&R's compliance in writing gave rise to breach of contract and other causes of action that do not raise free speech concerns. Consequently, whether or not the subject matter of the underlying dispute was a matter of public interest, the trial court erred in granting the Association's motion because the Association's actions that formed the basis of the Turners' causes of action were not undertaken in furtherance of the Association's right of free speech.

On a final note, the Association also says that the court undertook a careful review of the Turners' causes of action and determined that they were meritless. However, inasmuch as we have concluded that the threshold question, whether the challenged causes of action arose from protected activity, is answered in the negative, "we do not reach the anti-SLAPP statute's secondary question whether [the Turners] 'established that there is a probability that [they] will prevail on [their claims]' (§ 425.16, subd. (b)(1))." (*City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80–81 [124 Cal.Rptr.2d 519, 52 P.3d 695].)

## C. *Attorney Fees and Costs*

■ The Turners, without citation to authority, request that we order the trial court to award attorney fees and costs incurred in opposing the motion to strike and on appeal. The only basis upon which attorney fees could be awarded to the Turners at this juncture would be pursuant to section 425.16, subdivision (c). Under that statute, a prevailing plaintiff may recover attorney fees only upon showing the motion was frivolous or was solely intended to cause unnecessary delay. Those findings, or the lack thereof, are appropriately determined in the first instance by the trial court. However, the Turners are entitled to their costs on appeal.

## III

## DISPOSITION

The order is reversed. The Turners shall recover their costs on appeal.

Aronson, J., and Ikola, J., concurred.