[No. G042006. Fourth Dist., Div. Three. June 10, 2010.]

G.R., Plaintiff and Appellant, v.
IRENE INTELLIGATOR, Defendant and Respondent.

**COUNSEL**

Lewis R. Crouse II for Plaintiff and Appellant.

Mathon & Rosensweig and Michelle Cooper for Defendant and Respondent.

**OPINION**

**MOORE, J.**—The trial court granted defendant Irene Intelligator's special motion to strike (Code Civ. Proc., § 425.16) the complaint of plaintiff G.R. (Husband) and awarded Intelligator attorney fees and costs. It also denied Husband's motion for reconsideration of the attorney fee and costs award, due to lack of jurisdiction. Husband appeals from both rulings.

When Intelligator, an attorney representing Husband's ex-wife (Wife) in certain postmarital dissolution proceedings, filed a copy of Husband's credit report in support of a motion, Intelligator was clearly involved in petitioning activity within the meaning of Code of Civil Procedure section 425.16. This is so even though she admits to having violated California Rules of Court, rule 1.20 when she failed to redact personal identifiers before filing the credit report. Having demonstrated that the activity that formed the basis of Husband's causes of action was protected petitioning activity, the burden shifted to Husband to demonstrate a probability of success on his claims. He failed to meet this burden. In addition, he failed to show either that the trial court abused its discretion in awarding the attorney fees and costs or that it erred in denying his motion for reconsideration. We affirm.

I

FACTS

Intelligator represented Wife in marital dissolution proceedings. Judgment of dissolution was entered and the court retained jurisdiction to address postdissolution matters including after-discovered debts.

Some time after the judgment of dissolution was entered, Wife went to purchase a car. However, her auto loan was denied when the lender discovered that Wife had an adverse credit report. The credit report disclosed significant outstanding medical bills of which Wife, a non-English-speaking Russian immigrant, had been unaware. She obtained a credit report on Husband and learned that the medical bills were not reflected on his credit report, only on hers. Wife took both credit reports to Intelligator, seeking her help in making Husband pay the bills.

Intelligator sent demand letters regarding the unpaid medical bills to Husband's attorney. Since payment was not forthcoming, Intelligator ultimately filed, in the marital dissolution proceedings, a motion to require Husband to pay the outstanding medical bills. Intelligator attached to the motion copies of the credit reports of both Husband and Wife. Intelligator concedes that the unredacted credit report of Husband disclosed certain personal identifiers. However, Husband himself had already made at least one of those personal identifiers public through the prior filing of various documents.

Husband filed a complaint against Intelligator, asserting causes of action for violation of Civil Code section 1785.19 and for invasion of privacy, based on Intelligator's filing of his unredacted credit report in the marital dissolution proceedings. He contended that the disclosure of personal identifiers violated California Rules of Court, rule 1.20.

Intelligator filed both a Code of Civil Procedure section 425.16 special motion to strike and a demurrer. The court granted the special motion to strike, making the demurrer moot. In addition, the court awarded Intelligator $6,840 in attorney fees and costs.

Husband filed a motion for reconsideration, to challenge the award of attorney fees and costs. The court denied the motion. On appeal, Husband challenges the ruling on the special motion to strike, the ensuing judgment including the award of attorney fees and costs, and the ruling on the motion for reconsideration.[1]

---

[1] In his notice of appeal, Husband also purported to challenge a judgment of dismissal after an order sustaining a demurrer. However, in his opening brief, he makes no arguments concerning any such order, but rather represents that the trial court did not rule on the demurrer, because it was moot. Husband has abandoned his appeal with respect to any issues pertaining to the demurrer. (*Tanner v. Tanner* (1997) 57 Cal.App.4th 419, 422, fn. 2 [67 Cal.Rptr.2d 204].)

## II

## DISCUSSION

### A. *Code of Civil Procedure Section 425.16*

" 'Section 425.16 provides for a special motion to strike "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech under the United States or California Constitution in connection with a public issue." (§ 425.16, subd. (b)(1).) "The Legislature enacted the anti-SLAPP statute to protect defendants, including corporate defendants, from interference with the valid exercise of their constitutional rights, particularly the right of freedom of speech and the right to petition the government for the redress of grievances." [Citation.]' [Citation.]" (*Turner v. Vista Pointe Ridge Homeowners Assn.* (2009) 180 Cal.App.4th 676, 681–682 [102 Cal.Rptr.3d 750].)

 " 'In analyzing a section 425.16 motion, the court engages in a two-step process. "First, the court decides whether the defendant has made a threshold showing that the challenged cause of action is one arising from protected activity." [Citation.] The moving defendant meets this burden by showing the act underlying the plaintiff's cause of action comes within section 425.16, subdivision (b)(1). [Citation.] If the defendant meets this initial burden, the burden then shifts and the plaintiff must show a probability of prevailing on the claim. [Citation.] The plaintiff must demonstrate the complaint is both legally sufficient and is supported by a prima facie showing of facts sufficient to sustain a favorable judgment if the evidence submitted by the plaintiff is given credit. [Citation.] [¶] We review de novo whether section 425.16 protects the subject speech and whether [the plaintiff] demonstrated a probability he would prevail on his . . . cause of action. [Citation.]' [Citation.]" (*Turner v. Vista Pointe Ridge Homeowners Assn., supra*, 180 Cal.App.4th at p. 682.)

 " 'A defendant can meet his or her burden [of showing that the challenged cause of action arises from protected activity] by demonstrating the acts underlying the plaintiff's cause of action fit within one of the categories of section 425.16, subdivision (e). [Citation.] Section 425.16, subdivision (e) defines an act in furtherance of the defendant's right of petition or free speech in connection with a public issue to include: "(1) any written or oral statement or writing made before a legislative, executive, or judicial proceeding, or any other official proceeding authorized by law; (2) any written or oral statement or writing made in connection with an issue under consideration or review by a legislative, executive, or judicial body, or any other official proceeding authorized by law; (3) any written or oral

statement or writing made in a place open to the public or a public forum in connection with an issue of public interest; (4) or any other conduct in furtherance of the exercise of the constitutional right of petition or the constitutional right of free speech in connection with a public issue or an issue of public interest." ' [Citation.]" (*Turner v. Vista Pointe Ridge Homeowners Assn., supra*, 180 Cal.App.4th at p. 682.)

## B. *Application of Statute*

### (1) *Introduction*

Husband claims that Intelligator cannot meet her initial burden to show, under the first prong of the test, that the challenged causes of action arise from protected activity. He therefore contends that the second prong of the test, that is, whether he can show a probability of prevailing on his claims, is irrelevant. Consequently, he does not specifically argue that he could meet the burden to show a probability of prevailing, were we to hold that the burden had shifted to him. At the same time, Husband responds to Intelligator's argument that he cannot demonstrate a probability of prevailing on his claims because her action was protected by the Civil Code section 47, subdivision (b) litigation privilege. He argues that the privilege does not protect her. We disagree with Husband's analysis, as we shall show.

### (2) *First prong—protected activity*

■ With respect to the first prong of the test, concerning protected activity, Intelligator's filing of the credit report in connection with a postdissolution motion falls squarely within the language of Code of Civil Procedure section 425.16, subdivision (e)(1) and (2). "Under the plain language of section 425.16, subdivision (e)(1) and (2), as well as the case law interpreting those provisions, all communicative acts performed by attorneys as part of their representation of a client in a judicial proceeding or other petitioning context are per se protected as petitioning activity by the anti-SLAPP statute. [Citations.]" (*Cabral v. Martins* (2009) 177 Cal.App.4th 471, 479–480 [99 Cal.Rptr.3d 394] (*Cabral*).)

Husband nonetheless argues that even when an attorney files documents in a pending proceeding, the act of doing so is not necessarily protected activity. He contends that, in a case such as this, where the attorney violates a rule of court and discloses private information that it was not necessary to disclose, the attorney's action exceeds the boundaries of protected activity. We shall see.

■ As our Supreme Court has stated, "where a defendant brings a motion to strike under section 425.16 based on a claim that the plaintiff's action

arises from activity by the defendant in furtherance of the defendant's exercise of protected speech or petition rights, but either the defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law, the defendant is precluded from using the anti-SLAPP statute to strike the plaintiff's action." (*Flatley v. Mauro* (2006) 39 Cal.4th 299, 320 [46 Cal.Rptr.3d 606, 139 P.3d 2] (*Flatley*).) The question here is whether Intelligator's concession that she violated California Rules of Court, rule 1.20 in filing an unredacted credit report bars her from obtaining an order under section 425.16 striking Husband's complaint.

Intelligator cites several cases in support of her argument that *Flatley, supra,* 39 Cal.4th 299 is no impediment to her motion. First, she cites *Birkner v. Lam* (2007) 156 Cal.App.4th 275 [67 Cal.Rptr.3d 190] (*Birkner*). In that case, the court addressed whether a landlord engaged in protected activity, within the meaning of Code of Civil Procedure section 425.16, when he served his tenants with a notice to terminate tenancy and refused to rescind the same. (*Birkner, supra,* 156 Cal.App.4th at pp. 279–280.) It held that the service of the notice to terminate, being a prerequisite to the bringing of an unlawful detainer action, constituted an activity in furtherance of the protected right to petition. (*Id.* at p. 282.) The court rejected the tenants' argument that the landlord's activity was not a protected activity because of the allegation that the activity violated a rent ordinance. (*Id.* at pp. 278–279, 285.)

The *Birkner* court stated: "Nor is there any merit to plaintiffs' suggestion that the exclusion from anti-SLAPP coverage for indisputably illegal conduct, recognized in *Flatley, supra,* 39 Cal.4th at page 320, applies here. '[C]onduct that would otherwise come within the scope of the anti-SLAPP statute does not lose its coverage . . . simply because it is *alleged* to have been unlawful or unethical.' [Citations.] An exception to the use of section 425.16 applies only if a 'defendant concedes, or the evidence conclusively establishes, that the assertedly protected speech or petition activity was illegal as a matter of law.' [Citation.] The exception does not apply here. The trial court found, and we concur, that the evidence does not conclusively establish that [the defendant's] conduct of serving and refusing to rescind the termination notice was illegal." (*Birkner, supra,* 156 Cal.App.4th at p. 285.)

Intelligator emphasizes that, according to *Birkner, supra,* 156 Cal.App.4th 275, the *Flatley* exclusion from anti-SLAPP (strategic lawsuit against public participation) coverage applies only when the conduct at issue was illegal as a matter of law. This argument does not help her, however, inasmuch as she admits, in her opening brief, to filing the unredacted credit report at issue in violation of California Rules of Court, rule 1.20.

Intelligator also cites *Rusheen v. Cohen* (2006) 37 Cal.4th 1048 [39 Cal.Rptr.3d 516, 128 P.3d 713] (*Rusheen*). In *Rusheen*, an attorney filed a complaint on behalf of the plaintiff. The attorney filed allegedly perjured declarations of service in order to obtain a default judgment against the defendant. The trial court denied the defendant's motion to vacate the default judgment, but the appellate court reversed the judgment. On remand, the defendant filed a cross-complaint for abuse of process against the plaintiff's attorney. The trial court granted the attorney's special motion to strike. (*Id.* at pp. 1053–1054.) The Supreme Court held that this was proper. (*Id.* at p. 1065.)

■ According to Intelligator, the alleged acts of the attorney in *Rusheen, supra,* 37 Cal.4th 1048 clearly violated the rules governing litigation practice, and the case must stand for the proposition that the violation of those particular rules did not constitute the type of illegal conduct that would cause the *Flatley* exclusion to apply. It is tempting to infer that proposition from the case, but a case is not authority for a proposition that was not considered by the court. (*Flatley, supra,* 39 Cal.4th at p. 320.) The court in *Rusheen, supra,* 37 Cal.4th 1048 did not specifically address whether the filing of perjured declarations was the type of illegal conduct that would trigger the *Flatley* exclusion, or whether, as a general rule, one particular type of illegal conduct triggers the *Flatley* exclusion while another does not. True, the *Rusheen* court recited the two-pronged Code of Civil Procedure section 425.16 test, and impliedly found that the first prong had been met. (*Rusheen, supra,* 37 Cal.4th at p. 1056.) But, where the application of the two-pronged test is concerned, the *Rusheen* court focused its attention only on whether the second prong of the test had been satisfied. (*Id.* at pp. 1056–1065.) The court held that it had. (*Id.* at p. 1065.)

Here, neither party has cited a case directly addressing our issue, that is, whether a violation of California Rules of Court, rule 1.20 constitutes the sort of illegal conduct that would trigger the *Flatley* exclusion, and preclude the attorney from meeting his or her burden to demonstrate protected activity, within the meaning of the first prong of the two-part Code of Civil Procedure section 425.16 test. However, Intelligator cites a recent case, *Cabral, supra,* 177 Cal.App.4th 471, which provides insight on the issue.

In *Cabral, supra,* 177 Cal.App.4th 471, a woman filed suit against her ex-husband, his siblings, and several attorneys, in connection with a purported scheme to avoid child support payments. (*Id.* at pp. 475–477.) The various attorneys, respectively, had prepared a revised will for the ex-husband's mother that diverted what would have been his share of the estate to his sister, probated the mother's revised will, and represented the ex-husband and his siblings in certain fraudulent transfer actions. (*Id.* at

pp. 476–477.) The attorneys, in the underlying child support evasion litigation, filed special motions to strike the complaint against them and the trial court granted the motions. (*Id.* at p. 477.) The appellate court affirmed. (*Id.* at p. 475.)

With respect to the first prong of the Code of Civil Procedure section 425.16 test, the *Cabral* court quickly concluded that the attorneys' acts of lodging the will and pursuing probate proceedings, and defending the siblings in the various litigation matters, constituted protected petitioning activity under section 425.16, subdivision (e)(1) and (2). (*Cabral, supra,* 177 Cal.App.4th at pp. 479–480.) The ex-wife argued to the contrary, contending that the actions of the attorneys were illegal, because they violated certain child support evasion statutes. (*Id.* at p. 480.)

The *Cabral* court acknowledged the *Flatley* exclusion to the first prong of the Code of Civil Procedure section 425.16 test. (*Cabral, supra,* 177 Cal.App.4th at p. 480.) However, it emphasized the narrowness of the exclusion. The *Cabral* court observed that the Supreme Court in *Flatley, supra,* 39 Cal.4th 299 "concluded that 'communications [which] constituted criminal extortion as a matter of law and, as such, were unprotected by constitutional guarantees of free speech or petition,' were not protected by the anti-SLAPP statute. [Citation.] The [Supreme Court] made clear, however, that its holding was limited to 'the specific and extreme circumstances of this case,' in which the assertedly protected communications, as a matter of law, fell outside the ambit of protected speech. [Citation.]" (*Cabral, supra,* 177 Cal.App.4th at p. 480.)

The *Cabral* court also noted another prominent case in which the illegality exclusion was applied—*Paul for Council v. Hanyecz* (2001) 85 Cal.App.4th 1356 [102 Cal.Rptr.2d 864] (*Paul*), disapproved on other grounds in *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53 [124 Cal.Rptr.2d 507, 52 P.3d 685]. (*Cabral, supra,* 177 Cal.App.4th at p. 481.) In *Paul,* "the activity of which plaintiff complain[ed]—defendants' campaign money laundering—was not a *valid* activity undertaken by defendants in furtherance of their constitutional right [of] free speech." (*Paul, supra,* 85 Cal.App.4th at p. 1365.) Consequently, the trial court erred in granting the defendants' special motion to strike. (*Id.* at pp. 1359–1360.) The *Cabral* court, in evaluating *Paul, supra,* 85 Cal.App.4th 1356, emphasized that the money laundering activities were admittedly illegal. (*Cabral, supra,* 177 Cal.App.4th at p. 481.)

In concluding that the *Flatley* illegality exclusion did not block the abilities of the attorneys in the case before it to meet their burdens to show protected activity, the *Cabral* court noted that the attorneys' "actions in the

course of the probate proceedings and the litigation defense were neither inherently criminal nor otherwise outside the scope of normal, routine legal services." (*Cabral, supra,* 177 Cal.App.4th at p. 481.) It further stated that "[e]ven if the [attorneys'] actions had the effect of defeating or forestalling [the ex-wife's] ability to execute her judgment for child support, thereby (according to [the ex-wife]) violating the child support evasion statutes, this is not the kind of illegality involved in *Flatley v. Mauro, supra,* 39 Cal.4th 299, and *Paul for Council v. Hanyecz, supra,* 85 Cal.App.4th 1356." (*Cabral, supra,* 177 Cal.App.4th at p. 481, fn. omitted.)

We find the reasoning of the *Cabral* court persuasive. In the case before us, Intelligator filed a postdissolution motion seeking redress on a number of points, including the payment of outstanding medical bills. As a part of normal, routine legal services, Intelligator attached the credit reports of the parties, in support of the motion. Unfortunately, she failed to redact certain personal identifiers, as required by California Rules of Court, rule 1.20. However, this is not the type of criminal activity addressed in either *Flatley, supra,* 39 Cal.4th 299 or *Paul, supra,* 85 Cal.App.4th 1356.

Furthermore, a litigant who finds that opposing counsel has filed an unredacted credit report does, as the trial court in the matter before us pointed out, have means of redress other than commencing a separate lawsuit. California Rules of Court, rule 2.30 permits a litigant to seek sanctions against an attorney who fails to comply with the rules. Here, Husband could have sought sanctions against Intelligator in the ongoing postdissolution proceedings, where the court familiar with the matter was in the best position to address it. A separate lawsuit was completely unnecessary. Furthermore, if an attorney were subject to a separate action each time he or she committed a rule violation in the representation of his or her client, the effect would be to chill the hearty pursuit of a protected activity—the right to petition.

■ We conclude that the *Flatley* exclusion does not apply, and that Intelligator met her burden to show the challenged causes of action arose from protected activity. This being the case, the burden shifted to Husband to demonstrate a probability of prevailing on his claims.

(3) *Second prong—probability of success*

The trial court held that Husband could not demonstrate a probability of success on his claims because they were barred by the litigation privilege of Civil Code section 47, subdivision (b). On appeal, Husband argues that the privilege is no bar to his claims. We disagree.

■ As stated in *Flatley, supra,* 39 Cal.4th 299, "Civil Code section 47, subdivision (b) states in relevant part: 'A privileged publication or broadcast

is one made: [¶] . . . [¶] (b) In any (1) legislative proceeding, (2) judicial proceeding, (3) in any other official proceeding authorized by law, or (4) in the initiation or course of any other proceeding authorized by law and reviewable pursuant to Chapter 2 (commencing with Section 1084) of Title 1 of Part 3 of the Code of Civil Procedure . . . .' " (*Flatley, supra*, 39 Cal.4th at p. 321, fn. 9.) " 'The principal purpose of [Civil Code] section [47, subdivision (b)] is to afford litigants and witnesses [citation] the utmost freedom of access to the courts without fear of being harassed subsequently by derivate tort actions.' [Citation.] Additionally, the privilege promotes effective judicial proceedings by encouraging ' "open channels of communication and the presentation of evidence" ' without the external threat of liability [citation], and 'by encouraging attorneys to zealously protect their clients' interests.' [Citation.] 'Finally, in immunizing participants from liability for torts arising from communications made during judicial proceedings, the law places upon litigants the burden of exposing during trial the bias of witnesses and the falsity of evidence, thereby enhancing the finality of judgments and avoiding an unending roundelay of litigation, an evil far worse than an occasional unfair result.' [Citation.] [¶] To accomplish these objectives, the privilege is 'an "absolute" privilege, and it bars all tort causes of action except a claim of malicious prosecution.' [Citation.]" (*Flatley, supra*, 39 Cal.4th at pp. 321–322.) The *Flatley* court observed that the litigation privilege has bearing upon the second prong of the Code of Civil Procedure section 425.16 test. (*Flatley, supra*, 39 Cal.4th at p. 323.)

We turn to *Rusheen, supra*, 37 Cal.4th 1048 for guidance in the application of the litigation privilege in the context of the second prong. In *Rusheen*, as we have discussed, an attorney filed allegedly perjured declarations of service in order to obtain a default judgment against the defendant. In addressing the second prong of the test, the court held that the attorney's alleged act fell within the litigation privilege. (*Id.* at p. 1058.) It observed that "the 'salutary policy reasons for an absolute [litigation] privilege supersede individual litigants' interest in recovering damages for injurious publications made during the course of judicial proceedings.' [Citation.]" (*Id.* at p. 1064.)

In addition, the *Rusheen* court noted that the denial of the abuse of process claim was mitigated by the fact that there were alternative remedies, such as moving to set aside the default judgment, moving to recall and quash the writ of execution, and seeking a writ of supersedeas to block enforcement efforts. (*Rusheen, supra*, 37 Cal.4th at p. 1064.) In conclusion, the court in *Rusheen* held that there was no reasonable probability of success on the abuse of process claim, because the allegedly wrongful conduct was privileged. Therefore, the second prong of the Code of Civil Procedure section 425.16 test was met and the special motion to strike was properly granted. (*Rusheen, supra*, 37 Cal.4th at p. 1065.)

In the case before us, as in *Rusheen, supra,* 37 Cal.4th 1048, Husband had alternative remedies, as we have mentioned. One was seeking sanctions, to compensate him for any monetary loss arising out of the improper disclosure. Another was to have his credit report sealed, so that the information would not remain available to public view.[2] It was unnecessary, and contrary to the principles of the litigation privilege, for Husband to file a separate action to seek redress.

Despite the foregoing authorities, Husband contends that the Civil Code section 47, subdivision (b) litigation privilege must yield to the more specific law—California Rules of Court, rule 1.20, having to do with the protection of financial information of litigants. In support of his position, he cites *Komarova v. National Credit Acceptance, Inc.* (2009) 175 Cal.App.4th 324 [95 Cal.Rptr.3d 880] *(Komarova)*.

In *Komarova, supra,* 175 Cal.App.4th 324, the defendant obtained an arbitration award against a debtor with a name similar to the plaintiff's. *(Id.* at pp. 330–331.) The defendant mistakenly pursued the plaintiff for collection of the debt, and employed what the plaintiff characterized as unfair debt collection practices, in violation of the Rosenthal Fair Debt Collection Practices Act (Civ. Code, § 1788 et seq.) (the Rosenthal Act). *(Komarova, supra,* 175 Cal.App.4th at pp. 330–335.) Ultimately, the plaintiff filed an action against the defendant for, among other things, violations of the Rosenthal Act. *(Komarova, supra,* 175 Cal.App.4th at p. 335.)

The defendant in *Komarova, supra,* 175 Cal.App.4th 324 argued that conduct violating the Rosenthal Act was shielded by the litigation privilege of Civil Code section 47, subdivision (b). *(Komarova, supra,* 175 Cal.App.4th at p. 337.) In addressing this argument, the *Komarova* court observed: "The privilege bars tort claims other than for malicious prosecution [citation], and has been interpreted to preclude constitutional and statutory causes of action [citations]. On the other hand, the privilege has been held not to prevent [certain] criminal and State Bar prosecutions . . . . [Citations.]" *(Id.* at pp. 336–337.)

■ The *Komarova* court concluded: "Exceptions to the litigation privilege have been recognized under statutes that (1) are 'more specific' than the privilege, and (2) would be 'significantly or wholly inoperable' if the privilege applied. [Citation.]" *(Komarova, supra,* 175 Cal.App.4th at p. 339.)

---

[2] Husband and Wife received advance notice of when this opinion would be filed, and an opportunity to obtain the prior sealing of, or the redaction of portions of, any records they deemed appropriate to protect their respective privacy interests. At this point, any personal identifiers contained in the court's marital dissolution or civil litigation files should have been shielded from public view.

In determining whether "the litigation privilege [was] more specific than the Rosenthal Act," the *Komarova* court observed that the litigation "privilege [was] implicated in all judicial . . . proceedings [whereas] the [Rosenthal] Act [was] implicated in only the small subset of those proceedings that involve[d] collection of consumer debts." (*Komarova, supra,* 175 Cal.App.4th at p. 339.) In addition, the court answered in the affirmative the question whether the Rosenthal Act would be significantly inoperable if the litigation privilege applied. The court noted that the Rosenthal Act could be circumvented with ease if the litigation privilege applied, because a payee would be immunized by simply filing suit on the debt. (*Komarova, supra,* 175 Cal.App.4th at p. 340.)

In the case before us, unlike the case in *Komarova, supra,* 175 Cal.App.4th 324, the application of the litigation privilege is coextensive with the application of California Rules of Court, rule 1.20. That is to say, both the litigation privilege and the rule are generally implicated in all state court proceedings. Furthermore, to hold that the litigation privilege bars a separate tort action against an attorney for violation of rule 1.20 would not be to eviscerate that rule. As we have already observed, when an attorney violates rule 1.20, the affected party need only file a motion for sanctions or other redress in the pending proceedings. In addition, the party may report the attorney to the State Bar. In sum, *Komarova, supra,* 175 Cal.App.4th 324 does not compel the conclusion that the litigation privilege is inapplicable here, in connection with the rule 1.20 violation. (See also *Jacob B. v. County of Shasta* (2007) 40 Cal.4th 948, 952 [56 Cal.Rptr.3d 477, 154 P.3d 1003] [litigation privilege extends to cause of action arising out of constitutional right to privacy]; *Cabral, supra,* 177 Cal.App.4th at pp. 488–489 [application of litigation privilege would not eviscerate the child support evasion statutes].)

Husband does not address whether the litigation privilege should apply in the context of the alleged violation of Civil Code section 1785.19. We may, therefore, deem any argument on that point waived. (*R. A. Stuchbery & Others Syndicate 1096 v. Redland Ins. Co.* (2007) 154 Cal.App.4th 796, 801–802, fn. 3 [66 Cal.Rptr.3d 80]; *Niko v. Foreman* (2006) 144 Cal.App.4th 344, 368 [50 Cal.Rptr.3d 398].) Husband also does not address Intelligator's argument that, even if the litigation privilege did not apply, he simply could not show any violation of section 1785.19. Consequently, Husband also has waived any argument on that point. (*R. A. Stuchbery & Others Syndicate 1096 v. Redland Ins. Co., supra,* 154 Cal.App.4th at pp. 801–802, fn. 3; *Niko v. Foreman, supra,* 144 Cal.App.4th at p. 368.)

Given the foregoing, Husband has failed to meet his burden to show that he had a probability of prevailing on his claims against Intelligator. Consequently, the court did not err in granting Intelligator's special motion to strike his complaint.

#### (4) *Attorney fees and costs*

■ "Subdivision (c) of Code of Civil Procedure section 425.16 provides that 'a prevailing defendant on a special motion to strike shall be entitled to recover his or her attorney's fees and costs.' " (*Cabral, supra*, 177 Cal.App.4th at p. 490.) "The language of the anti-SLAPP statute is mandatory; it requires a fee award to a defendant who brings a successful motion to strike. Accordingly, our Supreme Court has held that under this provision, 'any SLAPP defendant who brings a successful motion to strike is *entitled* to *mandatory* attorney fees.' [Citation.]" (*Ibid.*) At the same time, "a defendant who brings a successful special motion to strike is entitled only to reasonable attorney fees, and not necessarily to the entire amount requested. [Citations.]" (*Id.* at p. 491.) We review the trial court's ruling for abuse of discretion. (*Ibid.*)

Here, Husband argues that the trial court abused its discretion in awarding Intelligator $6,840 in attorney fees and costs. First, he says that the court should not have awarded $390 in costs, because that figure included a first appearance fee which should not have been recoverable because only an answer or a demurrer is considered to be an initial pleading. Second, he contends the attorney declaration filed in support of the request for fees and costs was insufficiently detailed for the court to determine whether the time spent and work performed were reasonable and whether part of the time might actually have been spent preparing Intelligator's demurrer. Third, Husband objects to the declaration of attorney to the effect that she expected to spend approximately three hours to prepare a reply to the opposition to the motion and three hours to attend and participate in the hearing on the motion. He contends the attorney fee award should include only exact amounts, not estimates, and that the hearing concerned both the special motion to strike and the demurrer.

Husband's arguments are not persuasive. First, Intelligator filed her special motion to strike and her demurrer on the same date. Husband cites no authority for the proposition that it is inappropriate to compensate Intelligator for her first appearance fee as costs just because she filed two motions at the same time. Second, the trial court chose to accept the declaration of Intelligator's attorney as sufficient proof of the attorney's hourly rate, the time spent, and the reasonableness of the time spent. "We may not reweigh on appeal a trial court's assessment of an attorney's declaration[,] [citation]" (*Christian Research Institute v. Alnor* (2008) 165 Cal.App.4th 1315, 1323 [81 Cal.Rptr.3d 866]) and we see no abuse of discretion under the circumstances of this case in the court's decision not to require Intelligator's attorney to supply time records in support of her declaration. Third, at the time of the hearing on the special motion to strike, the court had before it Intelligator's reply

to Husband's opposition. It could, therefore, ascertain whether it fairly represented three hours' worth of work. Furthermore, we cannot say that the court abused its discretion in approving three hours worth of time to attend and participate in the hearing. "The trial court's fee determination ' " 'will not be disturbed unless the appellate court is convinced that it is clearly wrong.' " ' [Citation.]" (*Id.* at p. 1322.) We affirm the award of attorney fees and costs in this matter.

## C. *Motion for Reconsideration*

On March 9, 2009, Intelligator served Husband with a notice of ruling. Fourteen days later, Husband filed his motion for reconsideration of the attorney fee award. He based his motion for reconsideration on Code of Civil Procedure section 1008 and the court's inherent power to review and modify its own rulings while the action remains pending.

Having granted the special motion to strike, the court entered judgment in favor of Intelligator on April 1, 2009. According to Husband's notice of ruling, the court denied his motion for reconsideration on April 23, 2009, although the record on appeal does not contain a copy of an order on the motion. The notice of ruling states that the court denied the motion because it had concluded that it had no jurisdiction to consider the motion at that point, inasmuch as judgment had already been entered in the matter.

Husband states, without citation to authority, that the court erred in failing to consider his motion before entering judgment. Intelligator says the court's ruling was correct for three reasons: (1) the motion was untimely filed under Code of Civil Procedure section 1008; (2) the motion was defective under Code of Civil Procedure section 1008; and (3) the court lacked jurisdiction to reconsider the attorney fee award under its inherent power, because it had already entered judgment before holding a hearing on the motion. We address the parties' points in turn.

Code of Civil Procedure section 1008, subdivision (a) provides in pertinent part: "When an application for an order has been made to a judge, or to a court, and . . . granted, . . . any party affected by the order may, within 10 days after service upon the party of written notice of entry of the order and based upon new or different facts, circumstances, or law, make application to the same judge or court that made the order, to reconsider the matter and modify, amend, or revoke the prior order. The party making the application shall state by affidavit . . . what new or different facts, circumstances, or law are claimed to be shown."

Husband maintains that his motion was timely filed, and Intelligator has not convinced us otherwise. On March 9, 2009, Intelligator served Husband

with a notice of ruling, which recounted the court's March 5, 2009 findings and ruling. However, no copy of an order was attached. Intelligator does not address whether service of notice of an oral ruling constitutes service of notice of "entry of the order" within the meaning of Code of Civil Procedure section 1008, subdivision (a). Without knowing that, we cannot determine whether Intelligator's notice of ruling served to trigger the running of the section 1008, subdivision (a) filing deadline. It is a point we need not resolve, however, inasmuch as we agree with Intelligator that Husband's section 1008 motion was defective in any event.

The body of Husband's motion provided no indication that the motion was based upon new or different facts, circumstances, or law, as required by Code of Civil Procedure section 1008, subdivision (a). Furthermore, Husband's affidavit in support of the motion failed to articulate any new or different facts, circumstances, or law for the court's consideration. His motion clearly did not satisfy the requirements of section 1008, subdivision (a) and the court had no jurisdiction to consider the defective motion. (Code Civ. Proc., § 1008, subd. (e).) Although this may not be the particular ground upon which the court determined it had no jurisdiction to rule on his section 1008 motion, we affirm the rulings of the trial court if they are correct on any ground. (*Virtanen v. O'Connell* (2006) 140 Cal.App.4th 688, 710 [44 Cal.Rptr.3d 702].)

That leaves Husband's alternate ground for the motion—his request that the court simply choose to reconsider the motion under its inherent authority. The court was not required to follow this suggestion.

Husband now claims it was simply unfair for the court to enter judgment without considering his motion. Perhaps so, but the court was not required to exercise its inherent authority in a manner Husband suggested and, as we have shown, the court was without jurisdiction to consider Husband's defective Code of Civil Procedure section 1008 motion. (Code Civ. Proc., § 1008, subd. (e).) Moreover, the court was correct that, once it had entered judgment, it had no authority to rule on his motion. " 'A court may reconsider its order granting or denying a motion and may even reconsider or alter its judgment so long as judgment has not yet been entered. Once judgment has been entered, however, the court may not reconsider it and loses its unrestricted power to change the judgment. . . .' [Citation.]" (*APRI Ins. Co. v. Superior Court* (1999) 76 Cal.App.4th 176, 181 [90 Cal.Rptr.2d 171].) Finally, Husband cites no authority for the proposition that this court must reverse the judgment and order the trial court to rule on his motion before again entering judgment. It is Husband's burden, as appellant, to show reversible error. (*Virtanen v. O'Connell, supra*, 140 Cal.App.4th at p. 710.) He has not done so.

## III

## DISPOSITION

The judgment and orders are affirmed. Intelligator shall recover her costs on appeal.

Bedsworth, Acting P. J., and O'Leary, J., concurred.

A petition for a rehearing was denied June 30, 2010.