Filed 1/23/25  Wicks Brewing Co. v. Boeldt CA4/1

# NOT TO BE PUBLISHED IN OFFICIAL REPORTS

**California Rules of Court, rule 8.1115(a), prohibits courts and parties from citing or relying on opinions not certified for publication or ordered published, except as specified by rule 8.1115(b).  This opinion has not been certified for publication or ordered published for purposes of rule 8.1115.**

## COURT OF APPEAL, FOURTH APPELLATE DISTRICT

## DIVISION ONE

## STATE OF CALIFORNIA

| | |
|---|---|
| WICKS BREWING CO., INC. et al., | D083416 |
| Plaintiffs and Respondents, | |
| v. | (Super. Ct. No. CVRI2301765) |
| BRYAN J. BOELDT et al., | |
| Defendants and Appellants. | |

APPEAL from an order of the Superior Court of Riverside County, Eric A. Keen, Judge.  Affirmed.

Worthington Law, Brian P. Worthington; Padilla Law Group, and Michael D. Padilla, for Defendants and Appellants.

Law Office of Brian C. Unitt, Brian C. Unitt; Law Offices of Brian C. Pearcy, and Brian C. Pearcy, for Plaintiffs and Respondents.

Bryan J. Boeldt and Nicole Boeldt (collectively, defendants) appeal the trial court's order denying their special motion to strike a complaint filed by Edmund "Brad" Wicks (Brad) and Wicks Brewing Co., LLC (Wicks Brewing) (collectively, plaintiffs) as a strategic lawsuit against public participation

(SLAPP). (See Code Civ. Proc.,[1] § 425.16.) Defendants contend the court erred in finding that plaintiffs' claims do not arise from protected activity. Defendants also assert that plaintiffs cannot show a probability of succeeding on their claims.

We conclude that defendants failed to meet their burden of showing plaintiffs' claims arise from protected activity under section 425.16, subdivision (e)(3) or (e)(4), because the alleged activity had an insufficient connection to an issue of public interest. Having concluded that defendants' motion to strike falls short at the first step of the anti-SLAPP analysis, we need not reach the question of whether plaintiffs met their second-step burden of establishing a probability of success on the merits of their claims. (§ 425.16, subd. (b)(1).) Accordingly, we affirm the denial of defendants' motion to strike.

FACTUAL AND PROCEDURAL BACKGROUND

In March 2022, Brad's son, Ryan Wicks, was allegedly driving drunk when he collided with Gary Boeldt's car. Gary was killed in the crash, and Ryan was charged with driving under the influence (DUI) and murder. Ryan was employed as a brewmaster at Wicks Brewing at the time, but he was not on-the-clock when the collision occurred.

Defendants are the decedent's son and daughter. After the crash, they learned that Ryan had two prior DUI arrests which had been expunged, and one prior DUI conviction. "Enraged" that this appeared to be Ryan's fourth DUI, and believing that the community should be warned about him, defendants searched the internet for more information about Ryan. They found YouTube videos and online articles that led them to conclude that

---

[1] All undesignated statutory references are to the Code of Civil Procedure.

Ryan was the owner or co-owner of Wicks Brewing. Other online articles published shortly after the crash also described him as an owner of the brewery. Ryan's father Brad, however, had been the sole owner of the brewery since its establishment in 2013, and Ryan never had an ownership interest in Wicks Brewing.

Defendants allegedly posted on social media and other forums that Ryan was the owner of Wicks Brewing, was a repeat DUI offender, and had "killed" their father. Defendants' posts also described the owner of Wicks Brewing as a "killer" and "murderer." Several social media users, some of whom were defendants' friends and family members, reposted or responded to defendants' posts by stating things like: "Life long ban on Wicks Brewery. Murderer[]" and "Do not support this business. The owner has had 4 DUIs and killed someone. I understand this place is for alcohol but they obviously support drunk driving. Disgusting." Defendants' social media posts, and direct messages defendants sent to accounts that followed the brewery on social media, encouraged others to stop patronizing Wicks Brewing. Defendants' family members also posted reviews of Wicks Brewing saying, among other things, that Ryan was the brewery's owner or co-owner and that he "killed" Gary.

The brewery closed in March 2023 about a year after the collision. In April 2023, plaintiffs filed a first amended complaint against defendants alleging causes of action for defamation, false light, and negligence. Plaintiffs alleged that in the several years leading up to the collision, Wicks Brewing had an "excellent" reputation with a "loyal and enthusiastic following." But according to the complaint, defendants' efforts to "defame and harm both the business and reputations" of plaintiffs through their social and

3

other media posts forced the brewery to close, causing at least $50 million in damages.

Defendants filed an anti-SLAPP motion, arguing that the allegations in plaintiffs' amended complaint fell into two categories of protected activity described in section 425.16, subdivision (e). Specifically, defendants argued that plaintiffs were suing them for their online posts, which constituted statements made in a public forum in connection with an issue of public interest under section 425.16, subdivisions (e)(3) and (e)(4). Defendants also contended that plaintiffs could not demonstrate a probability of prevailing on the merits.

After considering the parties' briefs and holding a hearing, the trial court denied defendants' anti-SLAPP motion. The court found that defendants' statements involved a personal controversy rather than an issue of public interest. The court then concluded that because the first prong of the anti-SLAPP statute was not met, there was no need to address the second prong.

DISCUSSION

Defendants ask us to reverse the trial court's order denying their anti-SLAPP motion, arguing that the court erred in finding that plaintiffs' claims do not arise from protected activity under either section 425.16, subdivision (e)(3) or (e)(4). We disagree.

*A. Governing Law*

The anti-SLAPP statute provides, in relevant part, that "[a] cause of action against a person arising from any act of that person in furtherance of the person's right of petition or free speech . . . in connection with a public issue shall be subject to a special motion to strike [anti-SLAPP motion], unless the court determines that the plaintiff has established that there is a

4

probability that the plaintiff will prevail on the claim." (§ 425.16, subd. (b)(1).) Ruling on an anti-SLAPP motion typically involves two steps. First, the defendant moving to strike a cause of action must show the act underlying the claim falls within one of the four categories of protected activity listed in section 425.16, subdivision (e). (*Baral v. Schnitt* (2016) 1 Cal.5th 376, 396 (*Baral*); *Equilon Enterprises v. Consumer Cause, Inc.* (2002) 29 Cal.4th 53, 66 ["only means" by which a moving defendant can satisfy section 425.16 requirements is "to demonstrate that the defendant's conduct by which plaintiff claims to have been injured falls within one of the four categories described in subdivision (e) . . . ."]; *Bowen v. Lin* (2022) 80 Cal.App.5th 155, 160 (*Bowen*).)

The first two categories in subdivision (e) pertain to statements or writings made before, or in connection with, a "legislative, executive or judicial body, or any other official proceeding . . . ." (§ 425.16, subd. (e)(1), (2).) The third category involves statements or writings made in a public place or forum, and the fourth category includes other conduct in furtherance of free speech or the right to petition. (*Id.*, subds. (e)(3), (4).) A public forum is typically defined as a place that is open and accessible to the general public "for purposes of assembly, communicating thoughts between citizens, and discussing public questions. Means of communication where access is selective . . . are not public forums." (*Weinberg v. Feisel* (2003) 110 Cal.App.4th 1122, 1130 (*Weinberg*) [cleaned up]; see also *Clark v. Burleigh* (1992) 4 Cal.4th 474, 482.)

Section 425.16, subdivisions (e)(3) and (e)(4), both require a specific showing that the alleged speech or conduct was made in connection with an issue of public interest. (*Bernstein v. LaBeouf* (2019) 43 Cal.App.5th 15, 22 (*Bernstein*).) Determining whether speech or conduct was made "in

5

connection with" an issue of public interest calls for a two-part analysis. (See *FilmOn.com Inc. v. DoubleVerify Inc.* (2019) 7 Cal.5th 133, 149 (*FilmOn*); *Bernstein*, at p. 23, fn. 5 [applying *FilmOn*'s two-part test to both subdivisions (e)(3) and (e)(4) of section 425.16].) "First, we ask what public issue or issue of public interest the speech in question implicates—a question we answer by looking to the content of the speech. Second, we ask what functional relationship exists between the speech and the public conversation about some matter of public interest." (*FilmOn*, at pp. 149–150 [cleaned up].)

*FilmOn's* "first step is satisfied so long as the challenged speech or conduct, considered in light of its context, may reasonably be understood to implicate a public issue, even if it also implicates a private dispute." (*Geiser v. Kuhns* (2022) 13 Cal.5th 1238, 1253 (*Geiser*).) In determining what constitutes a public issue, courts consider various factors, including "whether the subject of the speech or activity was a person or entity in the public eye or could affect large numbers of people beyond the direct participants; and whether the activity occurred in the context of an ongoing controversy, dispute or discussion, or affected a community in a manner similar to that of a governmental entity." (*FilmOn, supra*, 7 Cal.5th at pp. 145–146 [cleaned up].)

*FilmOn's* second inquiry requires us to determine whether a functional relationship exists between the speech in question and the public conversation about the issue of public interest. (*FilmOn, supra*, 7 Cal.5th at pp. 149–150.) It is not sufficient that the speech merely " 'refer to a subject of widespread public interest; the statement must in some manner itself contribute to the public debate.' " (*Id.* at p. 150.) In conducting this inquiry, we must again "consider the particular context of the speech, including the speaker's identity; the 'purpose' of the speech; the nature of the audience and

6

the intended audience; and the 'timing' and 'location' of the communication." (*Murray v. Tran* (2020) 55 Cal.App.5th 10, 30.)

If we determine that defendants have met both of *FilmOn's* requirements and have therefore satisfied the first prong of the anti-SLAPP analysis, the burden shifts to plaintiffs to show that their causes of action are legally sufficient and supported by evidence that, if credited, would sustain a judgment in their favor. (*Baral, supra*, 1 Cal.5th at pp. 384, 396; *Bowen, supra*, 80 Cal.App.5th at p. 160.) "Only a cause of action that satisfies both prongs of the anti-SLAPP statute—i.e., that arises from protected speech or petitioning and lacks even minimal merit—is a SLAPP, subject to being stricken under the statute." (*Navellier v. Sletten* (2002) 29 Cal.4th 82, 89, italics omitted; *accord, Bowen*, at p. 160.) The trial court's decision on both prongs is subject to de novo review on appeal. (*Geiser, supra*, 13 Cal.5th at p. 1250; *Monster Energy Co. v. Schechter* (2019) 7 Cal.5th 781, 796; *Starr v. Ashbrook* (2023) 87 Cal.App.5th 999, 1018.)

*B. Analysis*

The parties do not dispute that defendants' social media statements were made in a public forum. (See *Muddy Waters, LLC v. Superior Court* (2021) 62 Cal.App.5th 905, 917 [internet postings on websites that are open and freely accessible to the public satisfy the public forum requirement of section 425.16].) The parties disagree, however, about whether those statements had a sufficient connection to an issue of public interest. Defendants contend that their statements satisfied the first step in *FilmOn* because they discussed the dangers of repeated drunk driving, an important public issue. Defendants further argue their statements alerted customers to Ryan's drunk driving so that they could make an informed decision about

7

whether to continue patronizing Wicks Brewing if doing so would "encourage Ryan to believe that there are no real consequences to his actions."

Deterring drunk driving and warning about its dangers undoubtedly serve the public's interests. (See *Ingersoll v. Palmer* (1987) 43 Cal.3d 1321, 1336, 1337 ["[d]runk driving is not merely a crime, it is a serious public safety problem"].) We recognize that the Supreme Court has broadly categorized statements made in connection with an issue of public interest to include those that "may reasonably be understood to implicate a public issue." (*Geiser, supra*, 13 Cal.5th at p. 1253.) As the Supreme Court observed in *Geiser*, *FilmOn's* second step "usually plays the more prominent role in screening anti-SLAPP motions because caselaw demonstrates that virtually always, defendants succeed in drawing a line — however tenuous — connecting their speech to an abstract issue of public interest." (*Geiser, supra*, 13 Cal.5th at p. 1250 [cleaned up].)

We are also mindful, however, that "[c]ourts have generally rejected attempts to abstractly generalize an issue in order to bring it within the scope of the anti-SLAPP statute." (*Talega Maintenance Corp. v. Standard Pacific Corp.* (2014) 225 Cal.App.4th 722, 733.) And as the Supreme Court also noted in *Geiser*, the second step in *FilmOn* may overlap with the first step because "[m]any of the same contextual considerations" apply to both steps. (*Geiser, supra*, 13 Cal.5th at p. 1256; *ibid.* ["[I]t may be more efficient to look to the whole context from which the conduct underlying the lawsuit arises, rather than attempting to parse which considerations fall under which of *FilmOn's* two steps."].)

Accordingly, even if we assume that defendants' online statements "may reasonably be understood to implicate a public issue" in the abstract, we nevertheless conclude, based on considerations applicable under both

8

*FilmOn* steps, that defendants' posts about their private dispute with plaintiffs did not implicate a public issue for anti-SLAPP purposes. (See *Geiser, supra*, 13 Cal.5th at p. 1253; *FilmOn, supra*, 7 Cal.5th at pp. 145–146.)

First, defendants have not shown a sufficient connection between their alleged postings and the asserted public interest in deterring drunk driving. (See *FilmOn, supra*, 7 Cal.5th at p. 140 [defendant's statements were "too tenuously tethered to the issues of public interest they implicate, and too remotely connected to the public conversation about those issues, to merit protection"]; *Weinberg, supra*, 110 Cal.App.4th at p. 1132 ["there should be some degree of closeness between the challenged statements and the asserted public interest" for anti-SLAPP protection to apply].) Defendants' posts described Ryan's DUI record, said that his drunk driving caused Gary's death, and encouraged people to stop patronizing Wicks Brewing because of Ryan's connection to the business. Contrary to how defendants characterize those statements, the posts themselves give no indication that their primary purpose was to educate the public at large about the dangers of drunk driving more broadly. The posts, for example, made no reference to educational materials, resources, advocacy groups, or broader campaigns addressing drunk driving. Rather, defendants' statements focused on Ryan's individual drunk driving record—and the tragic results of his particular alleged actions—in an apparent effort "to gather ammunition" for a boycott of Wicks Brewing. (*Woodhill Ventures, LLC v. Yang* (2021) 68 Cal.App.5th 624, 633 (*Woodhill Ventures*) [cleaned up]; see *Commonwealth Energy Corp. v. Investor Data Exchange, Inc.* (2003) 110 Cal.App.4th 26, 34 [issue must "go beyond the parochial particulars of the given parties[]" to qualify as a matter of public interest].) By calling the owner of Wicks Brewing a "killer" and encouraging

9

customers to stop patronizing the business because of its affiliation with Ryan, defendants' statements were "aimed to whip up a crowd" against Ryan. (*Woodhill Ventures*, p. 632.)  Even defendants' opening brief states that the posts were "designed to rally the community to send a message *to Ryan*[.]" (Italics added.)  And although Ryan himself could have been deterred from driving drunk in the future, given the absence of evidence that the posts had an impact on the wider community, there is only a tangential connection between deterring Ryan and a broader deterrent effect on the general public.

Second, neither Ryan nor the parties to this case were in the public eye to the extent courts have found significant in anti-SLAPP cases.  (Cf. *Hoang v. Tran* (2021) 60 Cal.App.5th 513, 520, 527 (*Hoang*) [alleged speech concerned a matter of public interest because it involved a "self-made billionaire" who co-founded a $14.5 billion-corporation and was "in the public eye" in the Vietnamese community]; *Summit Bank v. Rogers* (2012) 206 Cal.App.4th 669, 694 [comments disparaging a bank related to an issue of public interest because the bank was a publicly traded company with approximately 200 shareholders, and its chairperson was the subject of media attention].)  Beyond the fact that Wicks Brewing was a local brewery and Brad was its owner, there is no evidence indicating that either plaintiffs or defendants had unique standing in the community such that the public would have "a legitimate interest" in their "doings, affairs or character."  (*Hoang*, at p. 528 [cleaned up]; see *Woodhill Ventures, supra*, 68 Cal.App.5th at p. 634 [mere fact that a bakery had two locations in Los Angeles, and was mentioned in national publications, did not mean the business was "in the public eye"].)  Nor is there evidence that either the collision or the dispute between the parties generated "extensive media coverage."  (*Dubac v. Itkoff* (2024) 101 Cal.App.5th 540, 549.)

Third, for similar reasons, there is no evidence that defendants' warnings about Ryan and Wicks Brewing could affect large numbers of people or impact the community in a manner like that of a governmental entity. (Cf. *Church of Scientology v. Wollersheim* (1996) 42 Cal.App.4th 628, 650 [lawsuit involved issue of public interest because defendant Church of Scientology was "a large, powerful organization" that impacted the lives of many individuals]; see also *Donovan v. Dan Murphy Foundation* (2012) 204 Cal.App.4th 1500, 1506–1509 ["[T]he fact that the Foundation is one of the largest charitable organizations in Southern California, subject to public oversight by the Attorney General, and that it donates a substantial amount of money every year to persons and entities that affect millions of Southern Californians . . . [does not] transform a private disagreement among directors of the Foundation into a public issue"].) As noted, there is no evidence that Wicks Brewing, Brad, or Ryan had the prominence or stature to impact the community beyond the brewery's limited customer base. While the issue of whether consumers patronized Wicks Brewing in light of Ryan's DUI charges was consequential to defendants' own private interests, defendants have not adequately explained how that issue impacted the broader community.

Lastly, defendants have put forth insufficient evidence that their posts contributed to any public discourse concerning drunk driving. Defendants only point to two instances where members of the public, outside of defendants' immediate family and friends, responded to or reposted defendants' statements. Even if more people had engaged with the posts, a private dispute does not become a matter of public interest merely through wide communication to the public. (*Bernstein, supra*, 43 Cal.App.5th at p. 24.) It is not sufficient that the speech merely " 'refer to a subject of widespread public interest; the statement must in some manner itself

11

*contribute* to the public debate.' " (*FilmOn, supra*, 7 Cal.5th at p. 150, italics added, citing *Wilbanks v. Wolk* (2004) 121 Cal.App.4th 883, 898.)  There is no evidence, for example, that defendants' posts about Ryan's drunk driving generated public meetings, petitions, letters, or other broader engagement from the community.  (See, e.g., *Golden Eagle Land Investment, L.P. v. Rancho Santa Fe Assn.* (2018) 19 Cal.App.5th 399, 417 [record included petitions signed by 130 residents, letters from neighboring HOAs opposing the development at issue, and declaration that project generated significant public interest, "including at public meetings"].)  Without such evidence, we cannot conclude that the statements had any "functional relationship" with a public issue extending beyond defendants' private dispute with plaintiffs. (*FilmOn*, at pp. 149–150.)

Defendants argue that the $50 million in damages plaintiffs seek demonstrate that the postings had significant public interest implications. More specifically, defendants contend that the number of people who had stopped patronizing Wicks Brewing to cause that amount of loss would have had to be "staggeringly high."  But defendants provide no authority to support the idea that the amount of a plaintiff's requested relief determines whether speech implicates an issue of public interest.  Moreover, plaintiffs alleged in their complaint that a significant portion of their requested damages came from the cancellation of a large-scale distribution contract—a decision which could have been made by only a few individuals sensitive to bad publicity.  While plaintiffs will eventually bear the burden of proving causation and their entitlement to any amount of damages, at this stage in the proceeding, we give little weight to the amount of requested relief in our analysis of whether defendants' statements constituted protected activity.

12

For these reasons, we conclude that defendants have not met their burden of showing their alleged statements had a sufficient connection to an issue of public interest, and therefore the statements do not constitute protected activity under section 425.16, subdivisions (e)(3) or (e)(4).  We thus need not, and do not, consider whether plaintiffs established a probability of prevailing on its claims.  (See *City of Cotati v. Cashman* (2002) 29 Cal.4th 69, 80–81; *Turner v. Vista Pointe Ridge Homeowners Assn.* (2009) 180 Cal.App.4th 676, 688.)

DISPOSITION

The order denying the anti-SLAPP motion is affirmed.  Plaintiffs shall recover their costs on appeal.

BUCHANAN, J.

WE CONCUR:

HUFFMAN, Acting P. J.

KELETY, J.